**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Michael MIDGETT,
Defendant–Appellant.**

No. 91–5051.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1992.

Decided July 24, 1992.

As Amended Aug. 12, 1992.

Thomas Courtland Manning, Cheshire, Parker, Hughes & Manning, Raleigh, N.C., argued, for defendant-appellant.

John Eric Evenson, II, Asst. U.S. Atty., Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., on brief), for plaintiff-appellee.

Before MURNAGHAN and HAMILTON, Circuit Judges, and LEGG, District Judge for the District of Maryland, sitting by designation.

OPINION

HAMILTON, Circuit Judge:

William Michael Midgett appeals from a judgment of conviction and the imposition of a sixty-three-month sentence after a jury convicted him of two counts of possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and one count of maintaining a place for the purpose of manufacturing, distributing and using a controlled substance, 21 U.S.C. § 856(a)(1). The principal issue raised in this appeal is whether the district court erred when it considered the quantity of drugs in drug transactions between the appellant and a supplier as relevant conduct to appellant's conviction under 21 U.S.C. § 856(a)(1). Because we find the district court erred when it employed the drug quantity table, U.S.S.G. § 2D1.1(c), to enhance appellant's base offense level for his conviction under 21 U.S.C. § 856(a)(1), we vacate his sentence and remand for resentencing.

I

On November 28, 1989, narcotics officers of the Elizabeth City Police Department and the Pasquotank County Sheriff's Department executed a search warrant for cocaine and related evidence of drug trafficking at the residence of William Michael Midgett, in Elizabeth City, North Carolina. Testimony at trial revealed that the basis for the warrant was information received by officers from two confidential informants that they obtained cocaine on numerous occasions at Midgett's residence within the last six months.

As a result of the search, officers discovered the following evidence of drug trafficking: two zip-lock plastic storage bags containing approximately sixty-six grams of cocaine, one plastic baggie containing approximately eight grams psilocyn; three boxes of Glad zip-lock sandwich bags; aluminum foil wrap; one bottle of inositol powder; and a set of triple-beam scales. Officers discovered nine firearms in a bedroom, including a fully-loaded Colt 45–caliber semi-automatic pistol and approximately 282 rounds of 45–caliber ammunition.

While inside the residence, officers discovered the packaged cocaine in the freezer and showed it to Midgett. Midgett admitted that he was holding this for someone. Officers told him they received information that he was getting large amounts, up to a kilogram, from another subject named Bo Walker. Midgett stated that he was just getting a couple of ounces at a time. He gave the officers a piece of paper on which he stated was the phone number of Bo Walker. He further stated that he would like to help the officers, but was scared of Walker and wanted first to consult an attorney.

The officers decided not to arrest Midgett at that time in order to allow him to cooperate in the investigation. Because the defendant gave little, if any, cooperation, the defendant was charged by a Federal Grand Jury on July 17, 1990, with various drug offenses in a four-count superseding indictment, seven and one-half months after the search.

The defendant pleaded not guilty, was tried before a jury on October 25, 1990, and found guilty of possession with intent to distribute both cocaine and psilocyn (counts one and three), and maintaining a place for the purpose of manufacturing, distributing, and using cocaine and psilocyn (count four). He was acquitted on the charge of using and carrying a firearm during and in relation to drug trafficking crimes, 18 U.S.C. § 924(c)(1), count two of the superseding indictment.

At the sentencing hearing on May 14, 1991, the court heard testimony from Lemuel Clayton "Bo" Walker regarding the amounts of cocaine he distributed to Midgett. Walker testified that he heard Midgett was into cocaine, so he approached him with the idea of selling him cocaine.

During the course of their dealings, Walker testified he sold Midgett sixteen ounces of cocaine. Although Walker was unable to recall exact dates when transfers of cocaine took place, he was able to give a particular time period during which they occurred. Regarding his transfer of the final two ounces, when asked on cross-examination when this occurred, he testified that "the best I can acknowledge [sic] would be about '89," or "about two years ago." (Joint Appendix (J.A.) 453–54.) Midgett then responded that the final two-ounce transfer had "been longer than two years ago." *Id.* While the drug transfers occurred prior to the search and during the period appellant was maintaining a drug establishment, all such drug transfers took place away from Midgett's house.

At sentencing, the district court found that Walker had distributed sixteen ounces of cocaine to Midgett during a "period leading up to November 1988...." J.A. 411. The district court then grouped counts one, three and four into a single group. The district court found that the drug quantities found in the search and testified to by Walker (approximately 520 grams) were relevant conduct with respect to count four, maintaining a place for the purpose of manufacturing, distributing, and using cocaine and psilocyn. The court, however, did not find the sixteen ounces testified to by Walker to be relevant conduct attributable to counts one and three. After aggregating the drug quantities found in the search and testified to by Walker, the district court calculated the appellant's offense level to be level twenty-six.[1] With a Criminal History Category of I, the guideline range for imprisonment was sixty-three to seventy-one months. Appellant

---

1. Had the district court concluded that the 520 grams were relevant conduct with respect to counts one and three, appellant's offense level would have been twenty-six. U.S.S.G. § 2D1.1(c)(9).

was sentenced to sixty-three months and noted a timely appeal.

## II

U.S.S.G. § 2D1.8 applies to a conviction under § 856(a). The guideline provides for one enhancement of two levels "[i]f a firearm or other dangerous weapon was possessed...." The *Background* to § 2D1.8 provides: "This section covers the offense of knowingly opening, maintaining, managing, or controlling any building, room, or enclosure for the purpose of manufacturing, distributing, storing, or using a controlled substance contrary to law (*e.g.*, a 'crack house')." The base offense level for a U.S.S.G. § 2D1.8 offense is sixteen.

After the appropriate guideline has been selected, U.S.S.G. § 1B1.2(b) directs the sentencing court to "determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)." The relevant conduct provision of U.S.S.G. § 1B1.3 provides in part:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following: (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense; (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts or omissions that were part of the same course of conduct or common

> scheme or plan as the offense of conviction....

Application of the relevant conduct provision encompasses all of the adjustments made to a base offense level prior to grouping. Of particular importance, § 2D1.8 does not specify more than one base offense level and contains only one specific offense characteristic that relates to a firearm. In addition, the guideline at issue contains no cross references to other portions of Chapter Two.[2] Consequently, the use of the relevant conduct provision in relation to a § 2D1.8 offense is limited to the firearm enhancement[3] and any Chapter Three adjustments. U.S.S.G. § 2D1.8 does not implicate the drug quantity table expressly or implicitly. Nothing in the plain meaning of U.S.S.G. § 2D1.8 permits enhancement for the possession, storing, manufacturing or using a quantity of drugs. Thus, it was erroneous to incorporate the drug quantities found in the search and testified to by Walker as relevant conduct under U.S.S.G. § 1B1.3 to the § 856(a) offense.

Our conclusion that the district court erred in utilizing the drug quantity table in calculating Midgett's offense level is bolstered by the fact that there are other offenses of similar character in Chapter Two of the Guidelines that employ the drug quantity table in determining a defendant's offense level. For example, the drug quantity table is employed for violations of 21 U.S.C. § 860 (Distribution near a protected area (U.S.S.G. § 2D1.2)) and 21 U.S.C. § 858 (Endangering human life while illegally manufacturing a controlled substance (U.S.S.G. § 2D1.10)). For violations of U.S.S.G. § 2D1.2, the *total quantity* of the drugs "as part of the same course of conduct or common scheme or plan," *id.* Application Note 1 (emphasis added), not just the amount pertaining to the instant offense, is used in determining the appropriate offense level. We can only interpret

---

**2.** The district court in essence created its own cross-reference where none existed.

**3.** We note that the Presentence Report recommended a two-level enhancement for the nine weapons seized during the search. The district court, in calculating Midgett's offense level pursuant to U.S.S.G. § 2D1.8, did not elect to enhance or make sufficient findings as to the propriety of an enhancement pursuant to U.S.S.G. § 2D1.8(b)(1).

Congress' silence here as an intention not to employ the drug quantity table when calculating an offense level under U.S.S.G. § 2D1.8.

That is not to say that drug quantities may never be considered in fashioning an appropriate sentence for a § 856(a) offense. The district court could have approached this sentencing as an upward departure case. It appears that the district court never contemplated an upward departure nor did the government suggest that the district court upwardly depart from the recommended guidelines' sentence. We express no opinion on the propriety of an upward departure based on quantity for a § 856(a) offense, a question clearly not before us.[4] Accordingly, appellant's sentence is vacated, and we remand the case to the district court for resentencing.

VACATED AND REMANDED.

**4.** In passing, at least one court has upheld a departure based on quantity for a § 856(a) offense. *See United States v. St. Julian,* 922 F.2d 563 (10th Cir.1990) (Upward departure warranted because under U.S.S.G. § 2D1.8 Sentencing Commission did not adequately take into consideration quantity of drugs and sentence imposed was reasonable under the circumstances.). Of course, compliance (*i.e.,* adequate notice) with *Burns v. United States,* — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), would be required.