**UNITED STATES of America**

v.

**Jose ROBLES and Jose Croussett.**

**Crim. Nos. 92–00047–01, 92–00047–02.**

United States District Court,
E.D. Pennsylvania.

March 3, 1993.

Nancy B. Winter, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Margaret Poswistilo, Easton, PA, for Robles.

Diane Elliott, Easton, PA, for Croussett.

## MEMORANDUM

VAN ANTWERPEN, District Judge.

On April 22, 1992, following a two-day jury-trial before this court in Easton, Pennsylvania, defendants Jose Robles and Jose Croussett were both found guilty of conspiring to distribute cocaine-base and possessing cocaine-base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846. Defendant Robles was found not guilty of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

We noted that the Sentencing Reform Act of 1984 applied and directed that a presentence report be prepared. Defendants filed no objections to this report while the government objected seeking a two point enhancement. A hearing on the outstanding sentencing and other issues was held on November 20, 1992. On February 22, 1993, this court denied post-trial motions by both defendants for a new trial in a lengthy Memorandum and Order which sets forth the facts pertaining to this case in detail.

United States Sentencing Guidelines §§ 2D1.1(a)(3), (c)(5) provide a base offense level for each defendant of 34 for the 171 grams of crack involved in this case. The Government has objected to the Pre–Sentence Report for each defendant on the grounds that the report fails to consider that the drug transaction occurred near a playground. The Government argues that a two point enhancement is appropriate under Guideline Section 2D1.2 (*Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals; Attempt or Conspiracy*). The defendants have raised several legal and factual challenges to the Government's objection. Specifically, defendant Croussett argues that the enhancement cannot legally apply since the defendants were not convicted or charged with a violation of the substantive crime of distributing drugs near a protected area. 21 U.S.C. § 860. Both defendants also assert a factual defense that the playground is not open to the public and that it did not contain the requisite number of recreational apparatus on the date of the drug transaction in question. An offense level of 34 carries with it a Guideline sentencing range of 151–188 months, whereas an offense level of 36 carries a Guideline sentencing range of 188–235 months.

## DISCUSSION

Guideline Section 2D1.2 provides for a two-point enhancement to the base offense level when a drug offense occurs near a protected location. This section provides, in pertinent part:

(a) Base Offense Level (Apply the greatest):

(1) 2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances directly[1] involving a protected location or an underage or pregnant individual.

The commentary in this section expressly refers to 21 U.S.C. § 860. According to this statute, protected locations include schools and playgrounds and the area within 1,000 feet of the borders of their real property. A "playground" is defined as:

any outdoor facility (including any parking lot appurtenant thereto) intended for recreation, open to the public, and with any portion thereof containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.

21 U.S.C. § 860(d)(1).

In order for the statute to apply, it is not necessary that a defendant know that an area is a protected zone. *See United States v. Rodriguez*, 961 F.2d 1089, 1095 (3d Cir.1992). The same principal applies to an enhancement under the Guidelines. *United States v. Mobley*, 956 F.2d 450, 457 (3d Cir. 1992). The distance from the protected zone is measured by straight line, not by pedestrian route. *United States v. Watson*, 887 F.2d 980, 981 (9th Cir.1989).

The discussion of "Relevant Conduct" in the Sentencing Guidelines demonstrates that a court must look beyond the charged

---

1. The words "directly involving a protected location" were added on November 1, 1990 by Amendment 319 to deal with situations in which a defendant sold drugs near a protected location and also at another location. As noted in that amendment "This amendment provides for the determination of the offense level in cases in which only part of the relevant offense conduct involves a protected location...." See also Application Note 1 to the existing Guideline Section

which states "For example, if the defendant, as part of the same course of conduct or common scheme or plan, sold 5 grams of heroin *near* a protected location and 10 grams of heroin elsewhere, the offense level from subsection (a)(1) would be level 16 (2 plus the offense level for the sale of 5 grams of heroin, the amount sold *near* the protected location)...." (emphasis supplied)

conduct to determine the appropriate sentence. Guideline Section 1B1.3 states that "the base offense level ... shall be determined on the basis of the following:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant.

U.S.S.G. § 1B1.3. Commentary Note 6 provides the following guidance.

> A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute. For example, in § 2S1.1, subsection (a)(1) applies if the defendant "is convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)." Unless such an express direction is included, conviction under the statute is not required. Thus, use of a statutory reference to describe a particular set of circumstances does not require a conviction under the referenced statute. An example of this usage is found in § 2A3.4(a)(2) ("if the offense was committed by the means set forth in 18 U.S.C. § 2242").

U.S.S.G. § 1B1.3, comment. (n. 6). Significantly, Guideline Section 2D1.2 has no express direction requiring conviction under 21 U.S.C. § 860. Therefore, according to the Sentencing Guidelines, the proximity of the crime to a protected location may be considered without requiring conviction under the substantive statute.

We note that, under the relevant conduct provision, courts routinely consider acts and offenses for which the defendant has not been convicted or charged. For example, in *United States v. Mobley*, 956 F.2d 450, the defendant pleaded guilty to violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon, and received a two level enhancement under U.S.S.G. § 2K2.1(b)(2) because the gun was stolen. Although the defendant was not charged or convicted of

possession of a stolen firearm under 18 U.S.C. § 922(i) or (j), the Third Circuit upheld the enhancement and rejected the defendant's Due Process challenge finding that "at the trial stage the accused receives the full panoply of constitutional rights.... At the sentencing stage, however, a convicted criminal is entitled to less process than a presumptively innocent accused." *Id.* at 455 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 92 n. 8, 106 S.Ct. 2411, 2419 n. 8, 91 L.Ed.2d 67 (1986)).[2] The Third Circuit in *Mobley* also rejected the defendant's argument that he was being sentenced for a crime, possession of a stolen firearm under 18 U.S.C. §§ 922(i) or (j), for which he was not convicted, stating:

> [defendant's] argument misses the point. Mobley was not charged under §§ 922(i) or (j); he was charged under § 922(g). He was not sentenced for violating §§ 922(i) or (j); he was sentenced for violating § 922(g). Section 2K2.1(b)(2) did not sentence or enhance his sentence for violating §§ 922(i) or (j); it enhanced his sentence for violating § 922(g). The argument "misperceives the distinction between a sentence and a sentence enhancement." *United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir.1989) (holding that enhancing a sentence under U.S.S.G. § 2D1.1(b)(1) for weapons possession was not double jeopardy even though defendant was charged and acquitted for weapons possession under 18 U.S.C. § 924(c)(1)).

*Id.* at 457. Thus, conviction of a substantive offense is not a prerequisite to applying sentence enhancements.

■ Similarly, in the computation of drug defendant's offense level, a sentencing court may consider drugs quantities outside the offense of conviction. *See United States v. Collado*, 975 F.2d 985 (3d Cir.1992); *United States v. Williams*, 917 F.2d 112 (3d Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991). Indeed, courts have even used conduct for which a defendant has been acquitted to calculate an

---

**2.** In *McMillan*, the Supreme Court set forth a due process standard for sentencing factors: the enhancement factor must not (1) alter the maximum penalty available for the crime committed, or (2) negate the presumption of innocence or

relieve the prosecution's burden of proving guilt, or (3) create a separate offense calling for a separate penalty. *Id.* 477 U.S. at 87–89, 106 S.Ct. at 2417.

appropriate sentence. *See United States v. Ryan*, 866 F.2d 604, 609 (3d Cir.1989); *United States v. Mocciola*, 891 F.2d 13 (1st Cir. 1989).

We have found only one case dealing specifically with an enhancement under Guideline Section 2K1.2 for the sale of drugs within 1,000 feet of a school. In *United States v. McDowell*, 902 F.2d 451 (6th Cir.1990), the defendant was indicted on two counts; Count I charged conspiracy to maintain a place for the distribution of cocaine and crack, in violation of 21 U.S.C. § 846, and Count II charged the unlawful possession with intent to distribute crack and cocaine within 1,000 feet of two schools in violation of 21 U.S.C. § 845(a) (transferred to 21 U.S.C. § 860). Pursuant to a plea bargain, the defendant pled guilty to Count I and the court, at the request of the government, dismissed Count II.

At sentencing, the district court applied an upward departure of 45 months from the maximum guideline range for violation of 21 U.S.C. § 846. The court reasoned that an upward departure was appropriate since the impact of the plea agreement was to reduce by half the potential guidelines sentence because it failed to account for the fact that the defendant was operating a crack house within 1,000 feet of two schools. On appeal, the Sixth Circuit held that the district court properly considered the proximity of the defendant's crack house to the schools but improperly considered the location of the crack house as justification for an upward departure.

According to the Sixth Circuit, the location of the crack house should have been considered as relevant conduct in calculating the defendant's base offense level. *Id.* at 453. The court stated that "[t]he operation of this crack house close to two schools clearly is 'conduct that was part of the same course of conduct' as the conspiracy. [§ 1B1.3(a)(2) ] As such, the conduct should be considered when calculating the base offense level." *Id.* at 454. The court also found that the location of the crack house implicated Guideline Section 2D1.3 (a predecessor to Guideline Section 2D1.2) which provided that the base offense level is to be calculated "correspond-

ing to double the drug amount involved ... for distributing or manufacturing a controlled substance ... within 1,000 feet of a schoolyard." *Id.* Thus, in light of the clear language of the Sentencing Guidelines and the applicable case law, we should consider the location of the drug transaction in determining the applicability of a two point enhancement to the defendants' base offense level under Guideline Section 2D1.2.

### FACTUAL RULINGS

At the evidentiary hearing on November 20, 1992, the Government presented a Detective Kane who testified that, using a wheel measuring device, he determined the distance from the crime scene in the Burger King parking lot to the Lighthouse Field to be 361 feet, 3 inches. This distance conformed to a distance estimated using a City Planning Commission map and also comported with common sense. (11/20/92 Tr. at 117–19).

Two other factual issues, however, were not fully resolved at the sentencing hearing. Detective Kane testified that he observed "six or seven separate pieces of—of playground apparatus for children" when he visited the playground around the time of trial. (*Id.* at 116). The defendants, nevertheless, questioned whether the requisite number of apparatus were present in the park at the time the crime was committed, approximately four months earlier. The testimony presented at the evidentiary hearing strongly supports an inference that the apparatus were present at the time of the crime. For example, Mr. Donegan, a private detective hired by defendant Robles to visit the playground, testified on cross-examination that the apparatus presently there were permanently cemented into the ground. (*Id.* at 134). Detective Kane also testified on redirect that equipment had been installed on the playground back in the 1930's and the present equipment appeared to be there for a long time. (*Id.* at 136–37). The government has the burden of proving relevant conduct only by a preponderance of the evidence. *United States v. Reyes*, 930 F.2d 310, 314–15 (3d Cir.1991). Nevertheless, to protect the rights of the defendants, we notified all counsel that the court was requesting that an

officer of the owner of the playground be present to testify at the final sentencing date.

We also received conflicting testimony as to whether the playground was "open to the public." 21 U.S.C. § 860(d)(1). Detective Kane testified that the Lighthouse Field is open to the general public (11/20/92 Tr. at 113) and that he observed people entering the playground with their children. (*Id.* at 117). Mr. Donegan testified that as he was entering the Lighthouse Field, he was "challenged" by the playground's caretaker. (*Id.* at 130). According to Mr. Donegan, he spoke to the caretaker, who informed him that the playground belonged to the United Way Agency, that he needed permission to enter and that the playground was a private area not open to the public. (*Id.* at 130–32). On redirect, Detective Kane testified that he too was stopped by the caretaker but, contrary to Mr. Donegan's testimony, the caretaker informed Detective Kane that the playground was "open for children to come play at anytime." (*Id.* at 136). Detective Kane testified that he verified this with Ms. Shirley P. Thomas, Executive Director of the Lighthouse Settlement Home. (*Id.*).

In order to resolve these two disputes, the government produced Ms. Thomas at the final sentencing hearing and she testified that the facility is open to the public and that more than three pieces of playground equipment were in place long before the time of the offense on December 2, 1991. Accordingly, we found at the time of the final sentencing hearing on Tuesday, March 2, 1993 that the 2 point enhancement under Guideline Section 2D1.2 did apply to each defendant raising the Guideline level for each to Level 36 and the Guideline sentencing range to 188 to 235 months.

At the time of sentencing, both defendants claimed they had simultaneously developed a mysterious illness and would be unable to proceed. They appeared to be healthy to us, but to be safe we had them examined by the nurse at Northampton County Prison, who confirmed to the U.S. Marshal, that they were able to proceed with sentencing. Accordingly, we proceeded with sentencing. Had we not done so, we would have had to postpone this matter for yet another sentencing hearing and brought the playground representative back again.

The general attitude of these two defendants has been one of utter contempt for the law and the court. They have maintained their innocence in spite of overwhelming evidence, made untrue claims about their original counsel, and feigned illness. Defendant Robles went so far as to make obviously false claims under oath at the first sentencing hearing.[3] The seriousness of the offenses, coupled with the foregoing, outweighs the fact that both defendants have no prior record and the medical problems alluded to by defendant Robles. We feel a need to keep people like this away from playgrounds, and have therefore sentenced both of them at the high end of the sentencing guidelines. We have sentenced defendant Robles to 234 months and defendant Croussett to 228 months which are both within the Guideline sentencing range.

---

**3.** Although we found that the elements of perjury were present, this incident took place prior to the Supreme Court's decision in *United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). We also are aware that counsel offered to have defendant Robles testify at this hearing and we took counsel up on this offer. Under these unique circumstances, we will not impose a 2 point enhancement under Guideline Section 3C1.1, but will instead impose an extra six month sentence within the guideline sentencing range.