UNITED STATES of America, Plaintiff,

v.

David COLLETTI, Defendant.

Crim. A. No. 90–540 (AJL).

United States District Court,
D. New Jersey.

Oct. 13, 1993.

Jeremy D. Frey, Asst. U.S. Atty., U.S. Attorney's Office, Newark, NJ, for U.S.

Lawrence S. Lustberg, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for defendant.

## OPINION

LECHNER, District Judge

After a jury trial, defendant David Colletti ("Colletti") was found guilty on two counts of a three-count indictment. After sentencing, Colletti appealed to the Third Circuit. The Third Circuit vacated the sentence and remanded the case for resentencing. Currently before the court is the issue of Colletti's resentencing.[1]

*Facts*

On 31 October 1990, the Grand Jury returned a three count indictment (the "Indictment") against Colletti and three co-defendants, Joseph Shea ("Shea"), Kevin Kelly (collectively, the "Defendants") and Donald Uhler ("Uhler"). Counts One and Two of the Indictment charged Defendants knowingly and willfully conspired to transport and did transport in interstate commerce stolen diamonds in violation of 18 U.S.C. § 2314 and § 2. Only Uhler, who pleaded guilty on 9 January 1991, was charged in Count Three. On 7 February 1991, the jury returned a

---

1. On 20 September 1993, an order was entered effecting Colletti's new sentence (the "20 September 1993 Order"). This opinion sets forth the reasoning and analysis behind the 20 September 1993 Order.

In support of his arguments raised with respect to resentencing, Colletti submitted: a letter-brief from Colletti, dated 21 June 1993 (the "21 June Colletti Brief"); a letter-brief from Colletti, dated 12 July 1993 (the "12 July Colletti Brief").

In opposition to the arguments raised, the United States (the "Government") submitted: a letter-brief in opposition, dated 2 July 1993 (the "Gov't Brief").

A resentencing hearing was conducted on 7 September 1993 (the "Resentencing Hearing") because of delays in returning Colletti to the District for resentencing. Citations to the transcript of the Resentencing Hearing are referred to as: "Resentencing Tr. at ___."

verdict finding Defendants guilty on Counts One and Two.[2]

On 9 May 1991, Colletti was sentenced (the "1991 Colletti Sentencing") in accordance with United States Sentencing Commission *Guidelines Manual* (the "Sentencing Guidelines").[3] The sentence was imposed pursuant to a pre-sentence report (the "Pre–Sentence Report"), prepared by the United States Probation Office (the "Probation Office") on 8 March 1991, revised by the Probation Office on 29 April 1991, and further revised at sentencing. The Pre–Sentence Report included the following calculations:

*Offense Level Computation*

22. Base Offense Level: Count 1 and 2 involve the same offense conduct, therefore, they are grouped together pursuant to 3D1.2(b)(1).

23. The guideline for an 18 U.S.C. § 2314 offense is found in Section 2B1.2 of the Guidelines. The base offense level is 4.

24. Specific Offense Characteristic: The loss from the value of the diamonds is $626,000. It is noted that the diamonds were already in the retail market, therefore, the retail loss applies. Pursuant to Section 2B1.1(b)(1)(K), the base offense level is increased by 10.

25. Since the offense involved more than minimal planning, in that the defendant pointed out and identified the courier by the description of the individual, the vehicle, and the license plate, the base offense level is increased by 2. Section 2B1.2(b)(4).

26. Adjustment for Role in the Offense: The defendant abused a position of private trust in that at the time of the offense, Colletti was employed by a diamond remount firm, which did independent work at various Kay[e] Jewelers stores. Colletti provided co-defendant Shea with a description of the courier's vehicle, license plate, and the general type/quality of the merchandise that would be transported, therefore, enabling the plan to rob jewelry couriers to be carried out. Colletti's position of trust contributed in a substantial way to the facilitation of this crime. Pursuant to Section 3B1.3, the offense level is increased by 2.

27. Victim Related Adjustment: the victim was physically restrained in that the courier was forced at gunpoint into the backseat of his vehicle and his hands were bound with plastic flexcuffs. Pursuant to Section 3A1.3, the offense level is increased by 2.

28. Adjustment for Obstruction of Justice: None

29. Adjusted Offense Level (Subtotal): 20

30. Adjustment for Acceptance of Responsibility: Colletti denies any involvement in this offense and accepts no responsibility for his actions. Therefore, the offense level is not reduced.

Pre–Sentence Report at 6–7. At sentencing, the Government objected to the Pre–Sentence Report because no adjustment had been made to reflect Colletti's perjury at trial. It was determined the sentence should be enhanced, pursuant to Section 3C1.1,[4] for obstruction of justice. Sentencing Tr. at 31. Colletti's total offense level was 22. His criminal history category was I. Accordingly, the guideline range was 41 to 51 months. Colletti was sentenced to a term of incarceration of 51 months.

Colletti was further ordered to maintain full-time employment and to attempt restitution to the best of his ability, as determined

---

**2.** The transcript of Colletti's testimony at trial is referred to as "Colletti Testimony at ____."

**3.** Because the offense took place after 1 November 1987, the Sentencing Reform Act of 1984 was applicable. *See* 28 U.S.C. § 991. *et seq.*
 The transcript from the 1991 Colletti Sentencing is referred to as "Sentencing Tr. at ____."

**4.** Section 3C1.1 provides:

 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels. Sentencing Guidelines § 3C1.1.

from month to month by the Probation Office (the "Restitution Order"). He was ordered to first pay restitution in the amount of $25,-000.00 to Kaye Jewelers and then pay $264,-749.50 to the Hartford Insurance Company. Finally, Colletti was ordered to pay a special mandatory assessment of $50.00 per count, then payable immediately.[5] *Id.* at 51.

After sentencing, Defendants appealed. Among other things, Colletti appealed the imposition of the two point enhancement for obstruction of justice based on the finding that he perjured himself at trial. The case was before this court pursuant to the decision of the Third Circuit in *United States v. Colletti,* 984 F.2d 1339 (3d Cir.1992), which remanded for resentencing.

In considering Colletti's motion, the Third Circuit declined to rely on the Fourth Circuit's decision in *United States v. Dunnigan,* 944 F.2d 178 (4th Cir.), *reh'g denied,* 950 F.2d 149 (4th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 2272, 119 L.Ed.2d 199 (1992), which held that a sentencing court should not apply an enhancement for obstruction of justice simply because the court does not credit the defendant's testimony. The Third Circuit reasoned:

> Because the case is being remanded for resentencing for other reasons discussed below, and because having granted *certiorari* in the *Dunnigan* case, the Supreme Court will presumably be resolving the question in the reasonably near future, we deem it unnecessary to express a firm view on the subject at this time. Some brief discussion of the issue may, however, be of assistance to the district court on remand.

*Colletti,* 984 F.2d at 1347.[6]

The Third Circuit stated that a defendant is not subject to an enhancement merely because he takes the stand, denies his guilt under oath and the jury disbelieves him. *Id.* at 1348. In dicta, the Circuit observed that: "[s]omething more is required, and the issue is how to define the 'more.'" *Id.* The Circuit further observed that:

> In our view, in order to warrant the two point enhancement for obstruction of justice, the perjury of the defendant must not only be clearly established, and supported by evidence other than the jury's having disbelieved him, but also must be sufficiently far-reaching as to impose some incremental burdens upon the [G]overnment, either in investigation or proof, which would not have been necessary but for the perjury.

*Id.*

The Third Circuit acknowledged that the findings made at the 1991 Colletti Sentencing could

> be interpreted as expressing the court's view that Colletti did "more" than merely deny his guilt. On the other hand, these statements can fairly be interpreted, as merely confirming that the judge, as well as the jury, disbelieved Colletti's testimony. There was no finding—and the [G]overnment has not argued—that Colletti advanced some elaborate tissue of falsehoods which required significant additional effort on the part of the [G]overnment to dispel.... We do not rule out the possibility that the record may justify appropriate findings in support of the enhancement for obstruction of justice....

*Id.* Nevertheless, the Circuit remanded the case for resentencing to clarify the reasons for enhancement, in light of the anticipated Supreme Court decision in *Dunnigan.*

The Circuit also vacated the Restitution Order, and remanded the issue of restitution for reconsideration. In so holding, the Circuit stated resentencing was required to clarify whether Colletti's ability to pay was considered in making the Restitution Order. *Id.* at 1348.

*Discussion*

A. *Enhancement for Obstruction of Justice*

■ Since the decision of the Third Circuit in *Colletti,* 984 F.2d 1339, the Supreme Court

---

5. As part of his sentence, on release from custody, Colletti was to be placed on supervised release for three years on each count, to run concurrently. Sentencing Tr. at 50–51.

6. The decision of the Fourth Circuit was subsequently reversed, *see United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

decided *Dunnigan*, —— U.S. ——, 113 S.Ct 1111, clarifying the standards for enhancement under section 3C1.1. Colletti, however, argued that, at resentencing, this court must not consider *Dunnigan*, the most recent Supreme Court decision dealing with section 3C1.1 sentencing enhancements based on perjured trial testimony. Instead, Colletti asserted, this court must restrict consideration to the points raised by the Third Circuit. 21 June Colletti Brief at 5.

Colletti asserted that because the Government did not appeal the decision of the Circuit to the Supreme Court, the decision is final and *Dunnigan* should not be applied retroactively to resentencing. *Id.* at 5–7.

Colletti appeared to advance the incredible argument that, before this court can consider recent decisions of the Supreme Court, the Circuit must first give its approval. Contrary to the contentions of Colletti, neither the caselaw cited in his submissions nor the decision of the Circuit suggests this court should not consider the most current law, as stated by the Supreme Court, regarding enhancements based on perjury. On the contrary, the Circuit expressly declined to rule on the enhancement issue, and remanded the case for resentencing in accordance with the anticipated Supreme Court decision in *Dunnigan*. Colletti's resentencing was accomplished through reliance on current law.

 Colletti argued "the Supreme Court's retroactivity jurisprudence" mandates that the *Dunnigan* case should not be applied retroactively. *See* 12 July Colletti Brief at 2; Resentencing Tr. at 6–7. In deciding whether judicially-pronounced rules of criminal procedure should be applied retroactively, the Supreme Court has drawn a distinction between cases which are pending on direct review, and have not become final, and those which have become final, and are being collaterally attacked. The Court has stated that "a new rule for the conduct of criminal prosecutions is to be applied to all cases, state or [F]ederal, pending on direct review or not yet final...." *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987); *see id.* at 322, 107 S.Ct. at 713 ("[F]ailure to apply a newly declared ... rule to criminal cases pending

on direct review violates basic norms of constitutional adjudication.").

 When a decision has become final, however, and is reviewed collaterally, the retroactive applicability of judicially-pronounced rules has been generally curtailed. In such cases, retroactive application is allowed only where the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe," or where it "requires the observance of those procedures that ... are implicit in the concept of ordered liberty." *Teague v. Lane*, 489 U.S. 288, 307, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989) (quoting *Mackey v. United States*, 401 U.S. 667, 692–93, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part)).

Turning to the instant case, the Circuit's remand of the case for resentencing did not result in a final decision limiting retroactive application of the rule in *Dunnigan*. The precise issue affected by the Supreme Court's decision in *Dunnigan* remained open and was before this court at the direction of the Circuit.

Moreover, the Circuit remanded the case with express acknowledgment of the pendency of the *Dunnigan* case before the Supreme Court. The Circuit noted that a clarification of the law on sentencing enhancements based on perjury was imminent. *See Colletti*, 984 F.2d at 1347. The Circuit stated: "[W]e deem it unnecessary to express a firm view on the subject at this time." *Id.* It appears the Circuit intended that any changes or clarifications in the relevant law effected by the decision in *Dunnigan* be applied to Colletti's resentencing.

Colletti argued that the Circuit's affirmation of Colletti's conviction and the Government's failure to petition for *certiorari* rendered judgment in this matter final for the purpose of the retroactivity analysis. *See* 12 July Colletti Brief at 2. Colletti argued that the instant resentencing was in the nature of a collateral review, in which retroactive application of *Dunnigan* should be limited. *Id.*; 21 June Colletti Brief at 7 n. *. It defies logic to contend, as Colletti did, that the

finality of his conviction made the Circuit's decision as to sentencing final. The Circuit affirmed only the conviction, and remanded for resentencing in light of the impending decision in *Dunnigan*. The instant proceedings were not collateral to the initial case; there had not been a final judgement on sentencing. Accordingly, the Supreme Court's decision in *Dunnigan* was applied to Colletti's resentencing.[7]

Colletti further argued that retroactive application of *Dunnigan* to Colletti's resentencing would be unfair because "[h]ad Mr. Colletti known of the decision in *Dunnigan*, he might not have decided to testify, in light of the obvious risk of being assessed two points for obstruction of justice for doing so." 12 July Colletti Brief at 3. Colletti's argument in this regard was and is utterly lacking in merit.

The Supreme Court's decision in *Dunnigan* did not render illegal an act which theretofore had been legal. Perjury during trial was a ground for a two point enhancement of sentence at the time of Colletti's trial. *See* Sentencing Guidelines § 3C1.1, comment 3(b)

("The following is a non-exhaustive list of the types of conduct to which this enhancement applies: ... (b) committing, suborning, or attempting to suborn perjury...."); *Dunnigan*, — U.S. at —, 113 S.Ct. at 1115–16 (quoting same). The Supreme Court's decision in *Dunnigan* did nothing to alter the state of the law in this regard; it merely clarified the law. Colletti cannot viably argue that his knowledge of the pronouncement in *Dunnigan* would have affected his decision to perjure himself on the witness stand.[8]

It appears that the applicable law and the decision of the Circuit in this case required the application of *Dunnigan* to Colletti's resentencing.[9] *Dunnigan* involved a defendant's appeal of a district court's enhancement of sentence pursuant to section 3C1.1. The district court increased the defendant's sentence by two points based upon its finding that the defendant had perjured herself at trial. *See* — U.S. at ——, 113 S.Ct. at 1114. On appeal, the Fourth Circuit reversed the enhancement of sentence. *See United States v. Dunnigan*, 944 F.2d 178 (4th Cir.1991). The Supreme Court granted *certiorari* and

---

7. Colletti cited three cases in support of his contention that the Circuit's decision as to sentencing is final, barring retroactive application of *Dunnigan*. *See* 12 July Colletti Brief at 2. These precedents are all civil cases, and do not involve the question of retroactive application of judicial decisions. These precedents are of dubious relevance to the instant facts. Moreover, to the extent Colletti's precedents are relevant, they support the conclusion that the finality of Colletti's conviction did not render his sentencing final where the sentencing issue was remanded. *See Merrimack Street Garage v. General Motors Corp.*, 667 F.Supp. 41, 44 (D.N.H.1987) ("determination of a cause of action is final and binding *as to matters affirmed by a court of appeals* regardless that litigation might continue on some limited matters directly related thereto") (emphasis added); *McLendon v. Continental Group, Inc.*, 660 F.Supp. 1553, 1562 (D.N.J.1987) (no finality "if the decision is avowedly tentative"); *Illinois Bell Telephone v. Haines & Co., Inc.*, 713 F.Supp. 1122, 1124 (N.D.Ill.1989) (same).

8. Colletti cited *United States v. Robles*, 814 F.Supp. 1249 (E.D.Pa.1993) as standing for the proposition that it would be unfair to apply *Dunnigan* retroactively to Colletti's resentencing. In *Robles*, the court noted that the defendant had perjured himself, but declined to apply a two point enhancement of sentence. The court instead imposed an extra six-month sentence with-

in the guideline sentencing range. The court stated by way of a footnote: "Although we found that the elements of perjury were present, this incident took place prior to the Supreme Court's decision in [*Dunnigan*]." 814 F.Supp. at 1254 n. 3.

The court in *Robles* gave no justification as to why it declined to apply *Dunnigan*. Moreover, the court's decision not to impose enhancement was based, at least in part, on its acknowledgement that "counsel offered to have defendant testify at this hearing and we took counsel up on this offer." *Id.* In declining to apply the enhancement, the court noted that the case before it constituted "unique circumstances...." *Id.* The *Robles* decision provides little guidance in the instant inquiry.

9. Colletti appeared to argue that application of *Dunnigan* to his resentencing is barred by a form of claim preclusion. *See* 21 June Colletti Brief at 5–7 (using term "*res judicata*"). In order for relitigation of an issue to be barred by either claim preclusion or issue preclusion, there must have been a "final judgement on the merits." *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504–05 (3d Cir.1992). As stated, there has been no final judgment with respect to sentencing in this case. Accordingly, neither claim preclusion nor issue preclusion applies to the instant analysis.

reversed the Fourth Circuit's decision, reinstating the two-point enhancement. *See Dunnigan*, —— U.S. at ——, 113 U.S. at 1119.

The Supreme Court addressed two issues: first, whether the defendant's conduct constituted obstruction of justice, justifying enhancement of sentence under section 3C1.1; and second, whether enhancement of sentence for perjury at trial, as authorized by section 3C1.1, undermines the defendant's constitutional and statutory right to testify.

Addressing the requirements of section 3C1.1, the Supreme Court stated: "[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." —— U.S. at ——, 113 S.Ct. at 1117.

Perjury occurs when "[a] witness testifying under oath or affirmation ... gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* at ——, 113 S.Ct. at 1116.

The Court further stated that when making independent findings,

> it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if as was the case here, the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.

*Id.,* at ——, 113 S.Ct. at 1117.

Applying this standard, the Supreme Court concluded: "Given the numerous witnesses who contradicted [the defendant] regarding so many facts on which she could not have been mistaken, there is ample support for the [d]istrict [c]ourt's finding [that perjury had occurred and enhancement was justified under section 3C1.1]." [10] *Id.*

■ Applying the standard articulated in *Dunnigan* to the instant facts, it appears a two-point enhancement of Colletti's sentence for perjury is appropriate. Colletti's testimony at trial involved significantly more than a mere denial of guilt. In addition to denying he provided information to Shea for the purpose of conspiring to rob Kaye Jewelers, denying he agreed to accept money from Shea for such information, denying he received money from Shea for such information, Colletti Testimony at 606, and denying he was present at Shea's house early in the morning of 21 June 1989 to evaluate the stolen diamonds, mark them and repackage them, *id.* at 616, Colletti willfully gave false testimony concerning other material matters.

Colletti testified that his only dealings with Shea involved legitimate business transactions or accidental meetings on the street or in a bar. *Id.* at 604–05. He elaborated the reasons why he would not have set Robert Sirois up as the victim in a robbery. *Id.* at 607. Moreover, Colletti's testimony contradicted the testimony of four Government witnesses: Hilda Angemi, Uhler, Michael Kreiner and Robert Nolan. *Id.* at 610, 615–17.

As observed at the 1991 Colletti Sentencing:

> [A]n enhancement is not appropriate for a mere denial of guilt or assertion of innocence. That didn't occur here. [An enhancement] would be inappropriate if it was one point that was in controversy. Literally everything [Colletti] said, everything [he] said was joined in issue by the testimony of the other witnesses: Nolan, Uhler, Kreiner and Angemi.

---

**10.** The Court found adequate the district court's finding that the defendant was untruthful at trial with respect to material matters in this case.... [B]y virtue of her failure to give truthful testimony on material matters that were designed to affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.

*Dunnigan*, —— U.S. at ——, 113 S.Ct. at 1117. The Court further determined that enhancement of sentence for perjury at trial does not violate the accused's right to testify. *See* —— U.S. at ——, 113 S.Ct. at 1117–19. Because Colletti appeared to concede the constitutionality of the enhancement in this case, this issue will not be addressed. *See* Resentencing Tr. at 5–6.

Sentencing Tr. at 31. Furthermore, relying on the unique position of a trial judge to observe the witness' demeanor and comportment, it was observed that from "Colletti's appearance, his demeanor while testifying [it] was obvious he was lying." *Id.* Notes taken during the course of trial reflect this court's repeated observations that Colletti was lying. *Id.*

Colletti gave false testimony concerning several material matters; he did so with willful intent to provide false testimony, to mislead the jury and in effect to obstruct justice. *See Dunnigan,* —— U.S. at ——, 113 S.Ct. at 1117. This testimony was not the result of confusion, mistake or faulty memory. *Id.* Under the standard articulated in *Dunnigan,* Colletti's conduct constituted obstruction of justice, warranting an upward adjustment of two points under section 3C1.1.

Colletti argued that *Dunnigan* related only to the constitutionality of the enhancement provision of section 3C1.1. *See* Resentencing Tr. at 5. He contended the Circuit, in its decision in this case, imposed an additional, non-constitutional requirement for enhancement under section 3C1.1: that the perjury result in an "incremental burden on the Government." *See* Resentencing Tr. at 4. The Circuit did refer to this concept in enunciating a standard for imposing enhancement under section 3C1.1. *See Colletti,* 984 F.2d at 1348. However, Colletti was incorrect in arguing that the Supreme Court's decision in *Dunnigan* was limited to the constitutionality of section 3C1.1, and thus did not affect the Circuit's pronouncement.

■ As indicated, the bulk of the Supreme Court's opinion in *Dunnigan* addressed the non-constitutional requirements for imposing an enhancement for perjury under section 3C1.1. The standards the Supreme Court

announced for such an imposition did not relate to the constitutionality issue. *See* —— U.S. at ——, 113 S.Ct. at 1115–17. Therefore, to the extent the Circuit's comments conflict with the Supreme Court's standard in *Dunnigan,* the Circuit's decision was implicitly overruled by *Dunnigan.* The standard pronounced by the Supreme Court in *Dunnigan* does not require that the perjury at issue result in an incremental burden on the Government.[11] *See* —— U.S. at ——, 113 S.Ct. at 1117 ("Given the numerous witnesses who contradicted [the defendant] regarding so many facts on which she could not have been mistaken, there is ample support for the District Court's finding.").

Moreover, in addressing the "incremental burden" concept, the Circuit did not purport to address an issue not before the Supreme Court in *Dunnigan.* Rather, the Circuit stated:

[B]ecause, having granted *certiorari* in the *Dunnigan* case, the Supreme Court will presumably be resolving the question in the reasonably near future, we deem it unnecessary to express a firm view on the subject at this time. *Some brief discussion of the issue may, however, be of assistance to the district court on remand.*

*Colletti,* 984 F.2d at 1347 (emphasis supplied). It appears therefore that the Circuit acknowledged it was addressing an issue which could be affected by the Supreme Court's ruling in *Dunnigan.* Accordingly, to the extent the Circuit's opinion conflicts with the Supreme Court's ruling in *Dunnigan,* it was overruled.

■ Colletti argued that, even if *Dunnigan* was properly applied to his resentencing, an enhancement for obstruction of justice was improper because he was protected by the "exculpatory no" doctrine and his denials of guilt did not constitute perjury. 21 June

11. *Dunnigan* only requires that the sentencing court make findings that support all elements of perjury. *See* —— U.S. at ——, 113 S.Ct. at 1112. Perjury is constituted by false testimony given under oath or affirmation which concerns a "material matter" and is willfully given "to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.*

In addition, contrary to Colletti's assertion, 21 June Colletti Brief at 9, it does not appear the Circuit intended to impose an artificial rebuttal witness requirement. Where the defendant's testimony is in direct conflict with the testimony of numerous witnesses called by the Government in its case in chief, it is redundant and wasteful to require that, as a prerequisite to imposing an obstruction enhancement, the Government recall those witnesses as rebuttal witnesses.

Colletti Brief at 10–11. Colletti asserted that, unlike the defendant in *Dunnigan*, he simply denied the allegations against him rather than trying to explain away his conduct. *Id.*

The "exculpatory no" doctrine is inapplicable to the present situation. None of the cases cited by Colletti apply the "exculpatory no" doctrine in the context of a section 3C1.1 obstruction of justice enhancement based on perjured testimony at trial.[12] Moreover, application of that doctrine was not contemplated by either the Circuit in *Colletti*, 984 F.2d 1339, or the Supreme Court in *Dunnigan*, — U.S. ——, 113 S.Ct. 1111.

Colletti willfully obstructed justice by intentionally providing false testimony concerning material matters in an affirmative effort to lead the jury astray and affect the outcome of the trial. Accordingly, an upward adjustment of two points was imposed pursuant to section 3C1.1 for obstruction of justice based on Colletti's perjured testimony at trial.

**B.** *Restitution*

■ In remanding the case for reconsideration of the issue of restitution, the Circuit noted:

> The statute [authorizing restitution], 18 U.S.C. § 3664(a) mandates that, in determining whether to order restitution, the court 'shall consider ... the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents....'"

*Colletti*, 984 F.2d at 1348. The Circuit stated the record did not adequately show that Colletti's ability to pay was considered in issuing the Restitution Order. *Id.*

While it may not have been clear, Colletti's ability to pay was considered in making the Restitution Order. As stated, the Restitution Order provided Colletti was required to "maintain full-time employment and ... *at-*

*tempt restitution to the best of [his] ability,* as will be determined from month-to-month by the [Probation Office]." Sentencing Tr. at 51 (emphasis added).

The Restitution Order was made in light of the representations by Colletti's attorney at the 1991 Colletti Sentencing that Colletti's employment "history is good," and that Colletti "has three years of college under his belt." Sentencing Tr. at 24, 44. It was also noted at the Resentencing Hearing that Colletti would likely be able to pay at least some restitution because of the full time employment he will be required to maintain as a condition of his supervised release. Resentencing Tr. at 22–23.

It was acknowledged at the Resentencing Hearing that Colletti is burdened by extensive court-ordered child support obligations. Resentencing Tr. at 23. It was further acknowledged that such child support obligations take precedence over any restitution obligations which may be ordered here. *Id.* As the court stated,

> I think child support obligations are primary.
>
> . . . . .
>
> What I tried to tailor [in the Restitution Order] was a situation where if, because of child support payments and his inability to get a job, he couldn't pay $100.00 a week, he wouldn't have to pay anything....
>
> . . . . .
>
> That's why I use the word "attempt," when I say "attempt restitution to the best of [Colletti's] ability."
>
> . . . . .
>
> It is my intent here ..., after [Colletti's] child support payments are effected, after [Colletti's] living expenses are taken care

---

12. Most of the cases cited by Colletti for the "exculpatory no" doctrine involve prosecutions for false statements to a Federal agency or department pursuant to 18 U.S.C. § 1001. *See* 21 June Colletti Brief at 11 (cases cited therein). Only one case cited by Colletti applies the "exculpatory no" doctrine in the sentencing context.

*United States v. Urbanek*, 930 F.2d 1512 (10th Cir.1991). *Urbanek*, however, is distinguishable from the present case. The enhancement in *Urbanek* was based, in relevant part, on the defendant's denial to investigators that certain bank accounts existed. The statement was merely a denial of guilt made while not under oath.

of, that [Colletti is] to attempt restitution to the best of [his] ability.

Resentencing Tr. at 23, 26, 27, 37–38.

Colletti's other obligations do not, however, diminish the seriousness of his offense or the extent of the injury he caused to his victims. To the extent practicable in light of Colletti's child support obligations, restitution should be made.

Accordingly, Colletti was ordered to make restitution to the victims of his crimes *insofar as he is able*. The maximum amount of this restitution is: $25,000.00, payable to Kaye Jewelers ("Kaye"); and $264,749.50, payable to Hartford Fire Insurance Company ("Hartford"). As between Kaye and Hartford, Kaye is to be paid first. Colletti's ability to pay will be determined on a month-to-month basis by the Probation Office. In making such a determination, the Probation Office is to give precedence to Colletti's child support obligations, and to Colletti's payment of reasonable living expenses including food and shelter. Such a provision takes adequate account of Colletti's ability to pay restitution, as required by the Circuit and by 18 U.S.C. § 3664(a).[13]

### C. *Other Evidence*

■ At the 1991 Colletti Sentencing and again at the Resentencing Hearing, Colletti requested that he be allowed to introduce the testimony of relatives concerning his character and past conduct. Resentencing Tr. at 15–16; Sentencing Tr. at 42.

Under Federal Rule of Criminal Procedure 32(c)(3)(A),

> The court shall afford the defendant and the defendant's counsel an opportunity to comment on the [pre-sentence] report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

**13.** At the Resentencing Hearing, Colletti's attorney concurred that such a structuring of restitution would give adequate consideration to Colletti's ability to pay. Resentencing Tr. at 27–28. Colletti's attorney stated:

> The Court would have to tailor its restitution order to what the actual amount is that [Colletti] could afford in light of the kind of job he's

Fed.R.Crim.P. 32(c)(3)(A); *see Colletti,* 984 F.2d at 1349.

In the instant case, the testimony Colletti sought to introduce would not have contradicted, or even brought into issue, any portion of the Pre–Sentence Report. Sentencing Tr. at 42. The Pre–Sentence Report reported that Colletti "has no criminal convictions." Pre–Sentence Report at 7. As stated, the Pre–Sentence Report gave no criminal history points to Colletti, and assigned him the lowest criminal history category, category I. *Id.* The sentence imposed, both at the 1991 Colletti Sentencing and as a result of the instant proceedings, did not take into account Colletti's past criminal history, if any. As stated at the Resentencing Hearing,

> There was nothing, as I reiterate now, in my comments [during the 1991 Colletti Sentencing] which address anything about [Colletti's] past character, nothing at all. My comments only addressed and were exclusively [addressed] to [Colletti's] conduct during the crime. My comments with respect to recidivism were based upon the crime and the extreme nature of the crime.

Resentencing Tr. at 28–29.

The testimony proffered by Colletti relates only to Colletti's past criminal history, and does not relate to his conduct during the commission of the crime for which he was sentenced. Colletti's attorney conceded: "I cannot offer testimony to the Court with respect to the circumstances of this offense." Resentencing Tr. at 28. Because the testimony proffered by Colletti is irrelevant to sentencing in this case, and does not fall within the ambit of testimony admissible under Rule 32(c)(3)(A), such proffered testimony was not accepted at either the 1991 Colletti Sentencing or the instant resentencing. Resentencing Tr. at 17–18.

> likely to have ... as well as his child support obligations.... I'm sure [Colletti] is the type of person who would want to repay.

Resentencing Tr. at 24. When it was suggested by the court that the Restitution Order was in fact so tailored, Colletti's attorney conceded this point, stating: "I understand [the court's] intention." *Id.* at 27.

Colletti also requested that upon resentencing, the court consider evidence relating to his conduct while incarcerated. 12 July Colletti Brief at 6. This evidence was considered, and it was not viewed as sufficient to justify a reduction of sentence.

*Conclusion*

For the reasons set forth above, Colletti was sentenced to imprisonment for a term of 51 months for each count of his conviction, the sentences to run concurrently, with credit for time served. This sentence reflected a two-point upward adjustment imposed pursuant to section 3C1.1 for obstruction of justice based on perjured testimony at trial.

Colletti was also ordered to pay restitution, to the extent he is able, in the maximum amount of $289,749.50. This amount is comprised of $25,000.00 to Kaye and $264,749.50 to Hartford. These conclusions are set forth in the 20 September 1993 Order.