UNITED STATES of America

v.

Cleophus SALERY, III.

Cr. No. 93–167–N.

United States District Court,
M.D. Alabama, N.D.

Nov. 12, 1993.

See also 830 F.Supp. 596.

Charles Teschner, Asst. U.S. Atty., Montgomery, AL, for U.S.

Bruce Maddox, Montgomery, AL, for Cleophus Salery, III.

*ORDER*

MYRON H. THOMPSON, Chief Judge.

Defendant Cleophus Salery, III, was convicted by a jury of possession of "crack" cocaine with the intent to distribute it in violation of 21 U.S.C.A. § 841(a)(1) (West 1981). The United States contends that, although Salery was neither charged with nor convicted of the separate and more serious crime of committing this drug offense within 1,000 feet of a school in violation of 21 U.S.C.A. § 860 (West Supp.1993), Salery should still be sentenced under U.S.S.G. § 2D1.2 (1992), which provides for enhanced sentences for drug offenses occurring near "protected locations." Pivotal to the government's argument is U.S.S.G. § 1B1.3(a) (1992), which, according to the government, allows a court to fashion a sentence based on "relevant conduct," including conduct for which a defendant was not indicted. Because the government's reading of the United States Sentencing Guidelines is incorrect, the court rejects its request to apply Guideline § 2D1.2 to Salery.

The United States Sentencing Guidelines Manual (1992) provides for a nine-step procedure for determining an appropriate sentence for a defendant. U.S.S.G. § 1B1.1 (1992). The first step is to determine "the applicable offense guideline section." U.S.S.G. § 1B1.1(a) (1992); *see also* U.S.S.G. § 1B1.2(a) (1992). "As a general rule," in making this determination, "the court is to use the guideline section from Chapter Two most applicable to the offense of conviction." U.S.S.G. § 1B1.2, Comment. (note 1) (1992). The Statutory Index found in Appendix A "provides a listing to assist in this determination." *Id.* The second step is to determine the overall "offense level" based on a number of factors contained in the applicable guideline. U.S.S.G. § 1B1.1(b) (1992). These factors include the "base offense levels" and the "specific offense characteristics." *Id.* The appropriate base offense level and applicable specific offense characteristic should be determined based on the defendant's "relevant conduct." U.S.S.G. § 1B1.3(a) (1992); *see also* U.S.S.G. § 1B1.2(b) & Comment. (note 2) (1992).

Here, Salery was convicted of violating 21 U.S.C.A. § 841(a)(1) (West 1981). The Statutory Index lists only one Chapter Two guideline as applying to this statutory provision: U.S.S.G. § 2D1.1 (1992). Guideline § 2D1.1 lists a number of potentially applicable "base offense levels" and "specific offense characteristics." [1] The guideline also lists a number of determinants for ascertaining the appropriate base offense level and specific offense characteristic. These determinants include the amount of drugs involved and whether a dangerous weapon was possessed; they do not include whether the drug offense was committed near a school.

Under Guideline § 2D1.1, Salery would have an offense level of 26. The government contends, however, that the court should apply Guideline § 2D1.2, which would produce a higher offense level for Salery.[2] The government correctly observes that Guideline § 2D1.2 provides for an increased offense level for drug offenses committed near a "protected location" such as a school.[3] The government is also correct that Guideline § 1B1.3(a) provides that courts should calculate the offense level based on "relevant conduct" and that this conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant … that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A) (1992). In addition, as the government correctly observes, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination" of such conduct.[4] U.S.S.G. § 1B1.3, Comment.

1. Guideline § 2D1.1 provides in part as follows:

"Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy
 (a) Base Offense Level (Apply the greatest):
 (1) 43, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; or
 (2) 38, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance; or
 (3) the offense level specified in the Drug Quantity Table set forth in subsection (c) below.
 (b) Specific Offense Characteristics
 (1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.
 (2) If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance, or (B) the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by 2 levels. If the resulting offense level is less than level 26, increase to level 26.
 (c) DRUG QUANTITY TABLE … [a lengthy table is presented at this point]."

2. Guideline § 2D1.2 provides in part:

"Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals; Attempt or Conspiracy
 (a) Base Offense Level (Apply the greatest):
 (1) 2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances directly involving a protected location or an underage or pregnant individual; or
 (2) 1 plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense; or
 (3) 26, if the offense involved a person less than eighteen years of age; or
 (4) 13, otherwise."

3. Guideline § 2D1.2 does not expressly define what a "protected location" is. For purposes of this order, however, the court will assume that a school falls within the definition.

4. Guideline § 1B1.3 provides in part:

"Relevant Conduct (Factors that Determine the Guideline Range)
 (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
  (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
  (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeav-

(backg'd) (1992). *See, e.g., United States v. Robinson*, 935 F.2d 201, 204–05 (11th Cir. 1991) *cert. denied*, —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992); *United States v. Query*, 928 F.2d 383, 385–86 (11th Cir.1991); *see also United States v. Averi*, 922 F.2d 765 (11th Cir.1991) (per curiam) (relevant conduct included "evidence of the defendant's conduct relating to counts on which the defendant was indicted but acquitted at trial"). The government incorrectly concludes, however, that Guideline § 1B1.3(a)'s relevant conduct provisions require that this court chose Guideline § 2D1.2 as Salery's applicable guideline and set his offense level based on factors in this guideline.

The government overlooks that Guideline § 1B1.3(a)'s provisions for calculating offense levels based on relevant conduct are not open-ended. Subparagraph (a) restricts their application to the ·following circumstances: "Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three." [5] U.S.S.G. § 1B1.3(a) (1992). *See United States v. Jennings*, 991 F.2d 725, 733 (11th Cir.1993) (Guideline § 1B1.3(a)'s relevant conduct provisions apply only to the extent that the defendant's conduct falls within the restrictions of subparagraph (a)); *United States v. Midgett*, 972 F.2d 64, 66 (4th Cir.1992) (applying Guideline § 1B1.3(a)'s relevant conduct provisions within the restrictions of subparagraph (a)).

Salery's circumstances do not fall within subparagraph (a)'s restrictions. First, although the guideline applicable to Salery, Guideline § 2D1.1, specifies more than one base offense level, the determinants for the appropriate offense level (for example, the amount of drugs involved) do not include whether the drug offense occurred near a school. Second, although Guideline § 2D1.1 provides for specific offense characteristics, none of these characteristics includes whether the drug offense occurred near a school. Third, Guideline § 2D1.1 contains no cross references to guidelines applicable to drug offenses occurring near schools. And finally, although Chapter Three provides for a number of "adjustments"—based on such factors as the defendant's role in the offense, whether the defendant has accepted responsibility, and whether the victim was vulnerable or restrained or was a government official— these adjustments do not provide for the application of Guideline § 2D1.2. Guideline § 1B1.3(a)'s relevant conduct provisions, therefore, do not authorize the application of Guideline § 2D1.*2*, instead of Guideline § 2D1.*1*, to Salery. *See United States v. Johnson*, 1993 WL 62059 (4th Cir. March 8, 1993) (per curiam) (unpublished) (holding that, for defendant convicted for violation under 21 U.S.C.A. § 841, Guideline § 1B1.3 does not authorize application of Guideline § 2D1.2 even though drug offense was committed near school).

The government's reading of Guideline § 1B1.3(a)—to authorize the application of one guideline instead of another—also conflicts with the overall structure of the Sen-

---

or, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction; (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and

(a)(2) above, and all harm that was the object of such acts and omissions; and (4) any other information specified in the applicable guideline. (b) Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence). Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines."

5. The court limits its discussion of Guideline § 1B1.3 to subparagraph (a). Subparagraph (b) addresses such matters as determining a defendant's criminal history (Chapter Four) and determining the defendant's actual sentence from the sentencing matrix (Chapter Five); these matters are unrelated to the issue now before the court.

tencing Guidelines. As previously observed, the United States Sentencing Guidelines Manual (1992) provides that the first step in the nine-step procedure for determining a defendant's appropriate sentence is to determine the applicable guideline, using the Statutory Index to find the Chapter Two guideline most applicable to the defendant's offense of conviction, U.S.S.G. §§ 1B1.1(a) (1992), 1B1.2(a) (1992); and the second step is to ascertain the overall offense level based on a number of factors (including the base offense levels and the specific offense characteristics) determined according to the defendant's relevant conduct, U.S.S.G. §§ 1B1.1(b) (1992), 1B1.3(a) (1992). Guideline § 1B1.3(a)'s relevant conduct provisions therefore apply, not in the determination of the applicable guideline, but rather in the determination of the appropriate offense level within the applicable guideline, based on such factors as the base offense level and the specific offense characteristics. As the commentary to Guideline § 1B1.3 provides, "Subsection (a) establishes a rule of construction by specifying, in the absence of more explicit instructions in the context of a specific guideline, the range of conduct that is relevant to determining the applicable offense level (except for the determination of the applicable offense guideline, which is governed by § 1B1.2(a))." Guideline § 1B1.3, Comment. (backg'd). Guideline § 1B1.2's commentary similarly provides:

"Section 1B1.2(b) directs the court, once it has determined the applicable guideline (i.e., the applicable guideline section from Chapter Two) under § 1B1.2(a) to determine any applicable specific offense characteristics (under that guideline), and any other applicable sentencing factors pursuant to the relevant conduct definition in § 1B1.3. Where there is more than one base offense level within a particular guideline, the determination of the applicable base offense level is treated in the same manner as a determination of a specific offense characteristic."

Guideline § 1B1.2, Comment. (note 2).

This restrictive interpretation of Guideline § 1B1.3(a) is also consistent with the sentencing policy which underlies the Sentencing Guidelines. The Sentencing Guidelines are the product of a compromise between "charge offense" sentencing (based on conduct that constitutes the elements of the offense for which the defendant was charged and of which he was convicted) and "real offense" sentencing (based on the actual conduct in which the defendant engaged regardless of the charges for which the defendant was indicted or convicted). *See* United States Sentencing Guidelines Manual (1992) at 4. This compromise is reflected in large measure in Guideline § 1B1.3(a), which allows substantial but not unlimited deviation from the charged offense based on "relevant conduct."

One district court has held to the contrary, however. In *United States v. Robles*, 814 F.Supp. 1249 (E.D.Pa.1993), the court concluded that Guideline § 1B1.3(a) authorizes application of Guideline § 2D1.2 even though the defendant was neither indicted for nor convicted of committing a drug offense near a school. This court declines to follow *Robles*. The *Robles* court based its holding first on the broad observation that "under relevant conduct provisions, courts routinely consider acts and offenses for which the defendant has not been convicted or charged." *Id.* at 1252. This interpretation would allow almost unbridled application of Guideline § 1B1.3(a)'s relevant conduct provisions, contrary, as explained previously, to the express restrictions of subparagraph (a) and to the overall structure for determining sentences under the Sentencing Guidelines. The *Robles* court neither followed nor acknowledged these restrictions and this structure.

The *Robles* court relied also on the application of Note 6 in the commentary to Guideline § 1B1.3. Note 6 provides in relevant part:

"A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a *particular factor* be applied only if the defendant was convicted of a particular statute. For example, in § 2S1.1, subsection (a)(1) applies if the defendant 'is convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A).' Unless such an express direction is included, conviction under the

statute is not required. Thus, use of a statutory reference to describe a particular set of circumstances does not require a conviction under the referenced statute. An example of this usage is found in § 2A3.4(a)(2) ('if the offense was committed by the means set forth in 18 U.S.C. § 2242')."

(Emphasis added). Under Note 6, according to the *Robles* court, unless a guideline requires a conviction under the underlying substantive statute, the guideline may be applied to the defendant even though the defendant has not been convicted under the substantive statute. The *Roble's* court's reading of Note 6 is rejected for three reasons. First, Note 6's commentary is not determinative of whether a *particular guideline* may be applied, but rather is determinative of whether a *particular factor* within the guideline for ascertaining the offense level—such as the base offense level and specific offense characteristic—is applicable to the defendant. In other words, a correct reading of Note 6 is that, if the application of a particular base offense level or a particular specific offense characteristic is conditioned on conviction under a particular statute, then the factor may be applied only if the defendant has been convicted under the statute. The *Robles* court has read the term "particular factor" out of the note.

Second, the two examples given in Note 6—U.S.S.G. §§ 2S1.1(a)(1) (1992) and 2A3.4(a)(2) (1992)—support a more restrictive reading of the note than that given by the *Robles* court. The note gives Guideline § 2S1.1(a)(1) as an example because language in the guideline requiring a conviction is determinative of whether a particular factor within that guideline—specifically, whether a base offense level of 23 or 20—should be applied. Guideline § 2S1.1 provides in relevant part:

"2S1.1. Laundering of Monetary Instruments

  (a) Base Offense Level:

    (1) 23, if convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A);

    (2) 20, otherwise."

Note 6 then gives Guideline § 2A3.4(a)(2) as a contrasting example because the base offense level provisions within the guideline merely "refer" to a particular statute and do not condition application of a particular offense level on conviction under a particular statute. Guideline § 2A3.4 provides in relevant part:

"§ 2A3.4. Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact

  (a) Base Offense Level:

    (1) 16, if the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b);

    (2) 12, if the offense was committed by the means set forth in 18 U.S.C. § 2242;

    (3) 10, otherwise."

Neither example addresses the question of whether the application of the guideline itself was conditioned on a conviction of the underlying statute. Indeed, none of the guidelines in the United States Sentencing Guidelines contains language expressly conditioning its application on whether the defendant has been convicted of the underlying substantive statute; the guidelines do not differ in this regard.

Third and finally, because the guidelines do not have any express language conditioning their application on whether the defendant has been convicted of the underlying substantive statute, the *Robles* court's reading of Note 6 would permit a court, at step two in the sentencing process, to choose one guideline over another based on the defendant's actual conduct, regardless of whether he had been convicted under the underlying substantive statute. This approach to sentencing would not only violate the express language in Guideline § 1B1.3's subparagraph (a), it would violate the Sentencing Guidelines' orderly nine-step procedure for determining a defendant's sentence.[6]

Accordingly, it is ORDERED that the United States of America's request to apply

---

**6.** Whether there should be a "departure" upward because Salery committed the drug offense near a school is not before the court.

U.S.S.G. § 2D1.2 (1992) to defendant Cleophus Salery, III, is denied.