UNITED STATES of America

v.

David COLLETTI, Appellant.

UNITED STATES of America

v.

Kevin KELLY, Appellant.

UNITED STATES of America

v.

Joseph SHEA, Appellant.

Nos. 91–5405, 91–5518 and 91–5519.

United States Court of Appeals,
Third Circuit.

Argued March 3, 1992.

Decided Oct. 7, 1992.

Order Granting Rehearing and
Reinstating Opinion
Dec. 21, 1992.

Reinstated Opinion Dec. 21, 1992.

Peter Goldberger (argued), Philadelphia, PA, for David Colletti, appellant.

Tonianne J. Bongiovanni (argued), Asst. Public Defender, Newark, NJ, for Kevin Kelly, appellant.

John C. Eastlack, Jr. (argued), Cherry Hill, NJ, for Joseph Shea, appellant.

R. David Walk, Jr. (argued), Asst. U.S. Atty., Newark, NJ, for U.S.

PRESENT: STAPLETON, MANSMANN, Circuit Judges, and FULLAM, Senior District Judge.*

### ORDER

IT IS ORDERED that:

1. The petition for panel rehearing is granted.

2. The Opinion, filed herein on October 7, 1992, is modified as follows:

Page 14, second sentence, second paragraph, shall be amended to read as follows:

3. The Opinion is re-entered as of the date of this order.

### OPINION OF THE COURT

FULLAM, Senior District Judge.

Convicted of transporting stolen diamonds in interstate commerce, in violation of 18 U.S.C. § 2314, and of conspiracy to do so, 18 U.S.C. § 371, David Colletti, Joseph Shea, and Kevin Kelly have filed timely appeals to this court, seeking new trials and also challenging their sentences.

### I. FACTUAL BACKGROUND

On June 15, 1989, a courier transporting a valuable shipment of diamonds from Kay Jewelers was held up at gunpoint and robbed of some $626,000 worth of jewels. The crime had been planned for several months, principally by the defendant Shea. The defendant Colletti, who worked at Kay Jewelers, provided the advance information concerning the shipment, including the date and time, the route to be traveled, and a description of the vehicle and license number. The actual robbery was committed by the defendants Shea and Kelly, together with an unindicted co-conspirator, Robert Nolan, who testified for the government at trial.

Immediately after the crime, the three robbers proceeded by automobile to the home of one Donald Uhler in Somerdale, New Jersey. They revealed to him that they had just committed the crime, and he

agreed to stash the stolen diamonds in his basement. In the weeks following the robbery, Shea and Colletti made several trips to New York City and completed sales of the stolen gems.

### II. ALLEGED TRIAL ERRORS

A. *Evidence of other Crimes.*

The co-conspirator, Robert Nolan, and another government witness named Michael Kreiner, had been involved with appellant Shea in other robberies of jewelry couriers, both before and after the crime involved in this case. On these other occasions, allegedly, Shea had "cased" the job himself, without involving any "insiders" employed by the target firms. The appellant Colletti—but, understandably, neither of the other two appellants—charges that the trial judge erred by excluding cross-examination which would have disclosed these other crimes.

 The issue first surfaced during cross-examination of government witness Nolan, the unindicted co-conspirator. Colletti's counsel sought to cross-examine him concerning a tape-recorded conversation he had had with appellant Shea, discussing the other crimes and the fact that no inside information had been involved on those other occasions. Counsel for Shea objected, and in the ensuing colloquy it appears that counsel for the government joined in that objection. Before ruling on the objection, the court sought further clarification from Colletti's counsel as to the precise contents of the proffered conversation. Colletti's counsel stated that he was not entirely certain whether the other crimes had allegedly occurred before or after the crime on trial, but that he would investigate further during the next recess. The court made clear that, if counsel wished to pursue the matter, he would have to make a specific offer of proof. So far as the record discloses, that ended the matter: counsel apparently decided not to pursue the issue further. It is thus clear that this issue has been waived, and cannot now be consid-

---

* Honorable John P. Fullam, Senior District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

ered. Moreover, it seems crystal clear that the objection to this line of questioning should necessarily have been sustained on hearsay grounds.

■ But the admissibility of this "other crimes" evidence arose again during cross-examination of the government witness Michael Kreiner, when Colletti's counsel sought to cross-examine him on the same subject. Since Kreiner would have been testifying to facts within his own knowledge—his own participation with Shea in the other crimes—the hearsay rule was not implicated; and the issue has been preserved for appellate review. We conclude, however, that the trial judge did not abuse his discretion in excluding this cross-examination on relevancy grounds. The fact that inside information was not available, and was not used, on one occasion sheds no meaningful light on whether inside information was available and used on another occasion.

### B. Impeachment.

■ Appellants Colletti and Shea both complain that their impeachment of the government's star witness, Nolan, through cross-examination concerning his criminal record, was improperly restricted because they were not permitted to question him about a 1969 conviction described in his rap sheet as "disorderly person—false pretense". We conclude, however, that the rulings complained of were well within the discretion committed to the trial judge. In the first place, appellants failed to provide the trial judge with enough information about the alleged conviction to enable the court to rule on its admissibility for impeachment purposes. More significantly, appellants failed to comply with Fed. R.Evid. 609(b), which provides:

"... However, evidence of a conviction more than 10 years old ... is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

The district court's ruling that the proposed impeachment would not be permitted because appellants failed to provide advance notice to the government is unassailably correct. And, even if these obstacles were not present, Rule 609(b) would not permit use of a prior conviction more than 10 years old

"... unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

The impeachment value of a 22–year–old conviction, for what may well have been merely a summary offense akin to disorderly conduct, is virtually non-existent.

■ Finally, it should be noted that the witness was cross-examined concerning three previous burglary convictions and a 1987 parole violation for filing a false credit application. Thus, even if exclusion of the 1969 conviction had been erroneous—and it was not—the error would have been harmless.

### C. Bill of Particulars.

Appellant Shea also charges error in the denial of a bill of particulars. But the indictment adequately informed the appellant of the nature of the charges against him, and his defense was in no way prejudiced by the ruling complained of.

### D. Improper Argument.

A much closer question is presented by Colletti's argument that the prosecutor misrepresented the record and exceeded the bounds of legitimate advocacy when, in his rebuttal argument, he charged Colletti with a "clear lie" for having denied that he worked "with Robert Sirois [at Kay Jewelers]" on the night in question, and argued to the jury "if he lied about that, you can infer that he lied about his participation in this robbery ..." (App.Vol. II 757(a)) Colletti argues that his trial testimony—that he worked at Kay Jewelers that evening, but did not work "with Robert Sirois" on that occasion—was entirely truthful, and was not contradicted by any other witness. A close examination of the record supports

Colletti's assertion. Although both Colletti and Sirois worked at the store that night, there is no evidence that they were working with each other, or even that they were present in the store at the same time.

■■■■ Our review of the alleged error is circumscribed by the absence of any contemporaneous objection to the prosecutor's remarks. Thus, appellant can prevail on this issue only by establishing that the prosecutor's misstep was so egregious as to "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice". *U.S. v. Young,* 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985); *U.S. v. Pungitore,* 910 F.2d 1084, 1126 (3d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991). We do not believe this standard has been met.

Although the improper argument occurred during rebuttal, after the closing argument of appellant's counsel, it could readily have been corrected if it had been called to the attention of the trial judge. There is room for an inference that, in the context of the trial, the incident was not nearly as significant as the present argument would suggest. Moreover, the court's charge made clear the jury's responsibility for recalling and interpreting the testimony. The jury heard Colletti testify that he had indeed worked at Kay Jewelers that evening, and the jury was in a position to evaluate the testimony concerning whether he did or did not work with Mr. Sirois, if that detail was important.

The government's evidence was very strong. It is doubtful that the prosecutor's error affected the outcome. We are satisfied that the fundamental fairness of the trial was not undermined. No manifest injustice has been shown.

### E. *Late Disclosure of Statement.*

■■■■ Finally, appellant Kelly argues that a new trial should be granted because F.B.I. Agent Walsh was permitted to testify concerning statements allegedly made by Kelly, notwithstanding appellant's objection on the ground that the government had failed to disclose the existence of the statement until trial. There can be no doubt that appellant had sought, and was entitled to receive pre-trial, any and all statements attributed to Kelly, which the government had in its possession.

At the time the alleged statement was made, co-conspirator Nolan was cooperating with the F.B.I. Wearing a body recorder, Nolan engaged in a conversation with Kelly and Uhler. F.B.I. Agent Walsh was monitoring the conversation from a nearby automobile. It was later discovered that the recording equipment had not functioned properly, and Walsh therefore, the day after the conversation had occurred, committed to writing a summary of the conversation he had overheard the previous day. Appellant now contends that this document should have been furnished to his counsel before trial, and that the testimony of Walsh concerning the conversation should have been excluded, as a penalty for the government's violation of discovery requirements.

The trial judge concluded that Agent Walsh's written summary was not a "statement" within the meaning of Fed.R.Crim.P. 16(a)(1). In challenging this ruling, appellant relies on the Seventh Circuit's opinion in *U.S. v. Feinberg,* 502 F.2d 1180 (7th Cir.1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975):

> "A defendant's statement is discoverable when it or an account thereof is 'written or recorded' (Rule 16(a)(1)) promptly after the statement is made. Where a written record is contemplated when the statement is made and an account of the statement is eventually written down, the writing should be discoverable even if there was some delay. But where the statement is originally memorialized only in the recollection of a witness, then it is not discoverable even if that witness' recollection is eventually written or recorded." *Id.* at 1182–83.

In our view, the cited case supports the trial judge's ruling here. What Agent Walsh wrote down was not, and did not purport to be, a verbatim record of Kelly's

words, but merely a summary based on Walsh's recollection.

On the other hand, it seems reasonably clear that the purpose of attempting to record the conversation was to make appellant's exact words available for use against him at trial. If the recording device had functioned properly, there can be no doubt that pretrial disclosure of the tape and any resulting transcript would have been required, under Rule 16(a). Agent Walsh's memorandum of the conversation, at the very least, bears sufficient resemblance to a "statement" within the meaning of the rule that pretrial disclosure would have been the preferable course. It is unnecessary to express a firm conclusion as to whether there was or was not a violation of Rule 16(a) in this case, however, since there is no suggestion that appellant was prejudiced in any way by the late disclosure. The written statement was made available at a reasonably early stage of the trial. Even if there was a technical violation of Rule 16(a), suppression of this evidence would not likely have been an appropriate remedy for the breach. And appellant has totally failed, both in the trial court at the time, and on appeal now, to demonstrate any adverse impact stemming from the late disclosure.

For all of the foregoing reasons, we conclude that none of the appellants is entitled to a new trial.

## III. SENTENCING ISSUES

### A. *All Appellants*

An issue common to all of the appeals is whether the sentencing judge erred in adding 10 points to the offense level because the crime occasioned a loss in excess of $500,000. Appellants argue that the actual loss in this case was not the $626,000 retail value of the stolen gems, but the 25% discounted price which Kay Jewelers would have been willing to sell them for, or the even-lower wholesale replacement cost of the gems. Appellants note that the insurance company which covered the loss was able to settle Kay Jewelers' claim for $289,-749.50.

The guidelines provide a flexible basis for determining the amount of "loss" for purposes of determining the offense level under guideline § 2B1.1. Application note 2 provides:

" 'Loss' means the value of the property taken, damaged or destroyed. Ordinarily, when property is taken or destroyed, the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim ..."

■ The sentencing judge's determination of the amount of the loss is a factual finding, which may be disturbed by this court only if clearly erroneous. There was adequate evidence in the record to support the finding that the stolen gems had an actual market value of $626,000. That ends the matter: the value finding cannot be said to have been clearly erroneous. The base level of the offense was properly increased.

### B. *Shea*

■ In addition to the issue of valuation discussed above, Appellant Shea raises numerous arguments concerning his sentencing. Many of these arguments may be disposed of without extended discussion. We conclude that the sentencing judge properly took into account a 1974 drug conviction; that it was permissible to rely upon a letter from a Municipal Court clerk as proof of one of the prior convictions relied upon, particularly since there has never been, and is not now, any assertion that the conviction did not occur; that there was no upward "departure" in the calculation of appellant's criminal history; and that the upward adjustment based upon the use of a firearm by the co-defendant was entirely proper.

■ But we agree with the appellant that the four-level enhancement for being a leader of a criminal activity involving five or more participants, under § 3B1.1(a) was improper.

Section 3B1.1(a) provides:

"If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."

Application note 1 to that section defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." This court has previously explained, in *U.S. v. Inigo*, 925 F.2d 641, 659 (3d Cir.1991), that the "offense" in this context includes "the offense charged, as well as 'the underlying activities and participants that directly brought about the more limited sphere of the elements of the specific charged offense'" (quoting *U.S. v. Manthei*, 913 F.2d 1130, 1136 (5th Cir.1990), and that "participants" under § 3B1.1(a) "include persons who are used to facilitate the criminal scheme." As this court pointed out in *U.S. v. Murillo*, 933 F.2d 195, 198–99 (3d Cir.1991) "criminal activity" in § 3B1.1(a) is not synonymous with "relevant conduct" under § 1B1.3(a).

■ In our case, the actual crime charged was committed by Shea, Kelly, Colletti and Nolan. In concluding that Shea was a leader of a criminal activity involving at least five participants, the sentencing court counted, in addition to these four, Mr. Uhler, thus reaching a total of five. Appellant argues that neither he nor Uhler should have been counted. But there is no requirement that there be five persons in addition to their leader, merely a criminal activity "that involved five or more participants". Thus, we conclude that Shea was properly included in the count. This holding is consistent with, and probably compelled by, *U.S. v. Inigo, supra,* in which the leader was counted as one of the five participants. *See also U.S. v. Fells,* 920 F.2d 1179 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991); *U.S. v. Preakos,* 907 F.2d 7 (1st Cir.1990).

Although Shea himself was properly included as a "participant", we agree with his argument that Uhler should not have been included. It must be remembered that Uhler was never charged with the crimes for which Shea was convicted: conspiracy to transport the stolen diamonds in interstate commerce, and transporting the stolen diamonds in interstate commerce, in violation of 18 U.S.C. § 2314. Only the three appellants, plus unindicted co-conspirator Nolan, were, or properly could have been, charged with those offenses. The robbery was completed before Mr. Uhler became involved in any way, or even became aware of the criminal enterprise. Uhler was, of course, charged with receiving the stolen diamonds. And while there may be circumstances in which, because of arrangements made in advance, or because of a long-standing pattern of activity, receivers of stolen goods could properly be regarded as participants in the theft, this is not such a case. So far as the record discloses, all Mr. Uhler did was to allow the appellants to store the stolen merchandise on his property for a brief period. As reported by the presentence officer, the government had no information suggesting that Uhler was expecting the arrival of the diamonds, participated in the planning and execution of the robbery, or received any of the proceeds of the offense. On this record, Uhler was neither "criminally responsible for the commission of the offense" under application note 1 to § 3B1.1, nor was he used to facilitate the criminal offense—which was already completed.

Shea was sentenced to 105 months imprisonment, at the upper end of the guidelines for a level 25 offense. For the reasons discussed above, the offense level should have been pegged at 21 (base level of 4, plus 10 levels for amount of loss, plus 2 levels for more than minimal planning, plus 2 levels for physical restraint of the victim, with an upward departure of 3 points because of the presence of a weapon). Shea's sentence will therefore be vacated, and the case remanded for resentencing.

C. *Kelly*

■ Appellant Kelly was sentenced to 57 months, at the low end of the guideline range calculated by the district court. Kelly challenges only the decision to enhance his criminal history category from level III to level IV, arguing both that the depar-

ture should not have occurred, and that the court provided inadequate explanation for its decision to depart.

The sentencing judge specifically based the departure on the fact that Kelly's criminal record included several convictions which were not sufficiently recent to be included in the original calculation, and noted his agreement with the pre-sentence report on that issue. The pre-sentence report listed a total of seven previous convictions, five of which had not been counted in the original calculation. The sentencing judge did not abuse his discretion in increasing the criminal history range by a level of one, and the record adequately discloses his reasons for the adjustment. Moreover, as noted by the sentencing judge, the ranges overlap, and the actual sentence imposed would have been within the guideline range in any event. *See U.S. v. Bermingham,* 855 F.2d 925, 931–35 (2d Cir.1988). Kelly's sentence will therefore be affirmed.

### D. *Colletti*

Appellant Colletti was sentenced to imprisonment for 51 months, the maximum under the guidelines as calculated by the sentencing court. The offense level was fixed at 22, which included a two-level increase for obstruction of justice. Appellant was also ordered to make restitution in the sum of $289,749.50. Appellant now challenges both of these rulings, and also complains that he was improperly precluded from offering evidence at the sentencing hearing. We conclude that resentencing is necessary.

#### 1. Obstruction of Justice

Appellant challenges the 2 point upward adjustment for obstruction of justice, which was based upon the sentencing judge's finding that Colletti perjured himself at trial. Appellant argues that the adjustment is not authorized by the guidelines, properly construed, and could not be authorized without violating appellant's constitutional rights.

In *U.S. v. Dunnigan,* 944 F.2d 178 (4th Cir.), *rehearing en banc denied,* 950 F.2d 149 (4th Cir.1991), *cert. granted,* —— U.S.

——, 112 S.Ct. 2272, 119 L.Ed.2d 199 (1992), the Fourth Circuit Court of Appeals accepted this reasoning, and ruled that to enhance a defendant's sentence solely because he committed perjury at trial would indeed violate his constitutional rights, by chilling their exercise. Other courts of appeals have rejected the argument. *See, e.g., U.S. v. Rehal,* 940 F.2d 1 (1st Cir. 1991); *U.S. v. Matos,* 907 F.2d 274 (2d Cir.1990); *U.S. v. Paden,* 908 F.2d 1229 (5th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 710, 112 L.Ed.2d 699 (1991); *U.S. v. Acosta–Cazares,* 878 F.2d 945 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989); *U.S. v. Contreras,* 937 F.2d 1191 (7th Cir.1991); *U.S. v. Dyer,* 910 F.2d 530 (8th Cir.), *cert. denied,* 498 U.S. 907, 111 S.Ct. 276, 112 L.Ed.2d 232 (1990); *U.S. v. Barbosa,* 906 F.2d 1366 (9th Cir.), *cert. denied,* 498 U.S. 961, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990); *U.S. v. Beaulieu,* 900 F.2d 1537 (10th Cir.), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990); *U.S. v. Wallace,* 904 F.2d 603 (11th Cir.1990). This circuit has not yet been squarely confronted with the issue.

Because the case is being remanded for resentencing for other reasons discussed below, and because, having granted *certiorari* in the *Dunnigan* case, the Supreme Court will presumably be resolving the question in the reasonably near future, we deem it unnecessary to express a firm view on the subject at this time. Some brief discussion of the issue may, however, be of assistance to the district court on remand.

It is clear that, in exercising whatever discretion remains committed to the sentencing judge in determining the length of a sentence, the judge may properly take into account, and impose a more severe sentence because of, perjury committed by the defendant at trial. *U.S. v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Under the sentencing guidelines, however, the inquiry becomes more compartmentalized: (1) did the defendant merely profess his innocence, or actually attempt to "obstruct justice"; (2) did the Sentencing Commission intend that false denials under oath, without more, merit the

two-level increase, or was that step reserved for conduct involving others as well as the defendant? (3) Did the Sentencing Commission intend that denial of a two-level reduction for acceptance of responsibility was the proper sanction for persisting in false denials of criminal involvement, or is there room for double-counting?

No one disputes the fact that every defendant has an absolute constitutional right to deny guilt by pleading not guilty, and to put the government to its proofs. This does not, of course, give rise to a constitutional right to commit perjury. But all of the decisions cited above are uniform in holding that a defendant who takes the stand and denies guilt under oath is not properly subject to enhancement of his sentence merely because, by convicting him, the jury must have disbelieved his testimony. Something more is required, and the issue is how to define the "more".

A clear case for the obstruction-of-justice enhancement would be a defendant who not only testified perjuriously, but sought to suborn perjury in others. In that situation, the defendant could properly be separately prosecuted for obstructing justice. At the other extreme, a defendant who merely takes the stand and says "I did not do it" has not obstructed the course of justice any more than a defendant who pleads not guilty and does not testify.

█ In our view, in order to warrant the two point enhancement for obstruction of justice, the perjury of the defendant must not only be clearly established, and supported by evidence other than the jury's having disbelieved him, but also must be sufficiently far-reaching as to impose some incremental burdens upon the government, either in investigation or proof, which would not have been necessary but for the perjury.

█ In the present case, the sentencing judge expressed the view that the enhancement for obstruction of justice would not be proper merely because the defendant testified and the jury did not believe him, but the court based its enhancement decision upon the following considerations: (1) the fact that virtually all of the defendant's testimony was disputed by other witnesses; (2) "his appearance, his demeanor while testifying was obvious he was lying. My trial notes, I reviewed them again this morning, I have notes in there he lies, he's a liar, his testimony is not believable. I didn't believe him when he testified. It's obvious the jury didn't believe him. It's clear to me that he testified falsely in an attempt to obstruct justice, to avoid conviction. His demeanor on the stand by itself underscored that. It's not any one incident. It's the totality of all his comments. It's not the fact that he denied guilt or asserted innocence, it's the totality of what he did and how he did it." These statements can be interpreted as expressing the court's view that Colletti did "more" than merely deny his guilt. On the other hand, these statements can fairly be interpreted as merely confirming that the judge, as well as the jury, disbelieved Colletti's testimony. There was no finding—and the government has not argued—that Colletti advanced some elaborate tissue of falsehoods which required significant additional effort on the part of the government to dispel.

We believe it is necessary to remand for further clarification of this issue. We do not rule out the possibility that the record may justify appropriate findings in support of the enhancement. We hold merely that the reasons set forth at the time of sentence do not adequately support the two-level enhancement for obstruction of justice, in addition to the denial of the two point reduction for acceptance of responsibility.

## 2. The Restitution Order

█ Resentencing is also required because, without explanation, and, so far as the record discloses, without considering Colletti's ability to pay, the sentencing judge ordered Colletti to make restitution in the sum of $289,749.50. The statute, 18 U.S.C. § 3664(a) mandates that, in determining whether to order restitution, the court *"shall consider* ... the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents ...".

Under the ruling of this court in *U.S. v. Demes*, 941 F.2d 220 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991), the restitution order must be vacated and the case remanded for reconsideration and adequate findings on the record.

### 3. Other Sentencing Issues

■ The government had sought an upward departure because of the use of a firearm during the robbery. The district court concluded that Colletti was not responsible for the use of firearms by the actual robbers, and declined to depart on that basis. Colletti complains that the court failed to reduce this ruling to writing or otherwise cause it to be appended to the final version of the PSI, which, in the normal course of things becomes a part of appellant's file. Contrary to the government's argument, we believe that this did involve a factual dispute within Rule 32, and that the final outcome should have been reflected in writing in the presentence report. See *U.S. v. Rosa*, 891 F.2d 1063, 1070 (3d Cir.1989).

Finally, Colletti complains that he was improperly denied the right to present evidence at the sentencing hearing. The record does reflect that Colletti's counsel sought to present testimony from members of Colletti's family to refute aspersions upon Colletti's character contained in the PSI report, but the sentencing judge peremptorily refused to permit any testimony by family members. ("Absolutely not, no way. You may speak, Mr. Colletti may speak"), notwithstanding counsel's statement that "the reason for the request was that there were certain comments made in the presentence report with respect to his character and history. I anticipated very brief comments from the family in those [regards]"; and that, in subsequently imposing sentence, the sentencing judge made clear that he was influenced to a large extent by his perceptions about appellant's character. The court stated:

"What drove you to do this? Basic greed, avarice, slothfulness. You conducted yourself as a blight on society. You abused a position of trust. You tried to lead people to think that you were honest, upright, somebody who was dependable, somebody who could be relied upon. And you did all that for one purpose, to steal, to cheat. You're a common crook, a thief, nothing better than that ...

The fact of the matter is you are no stranger to the criminal justice system. I fear in the future you'll be no stranger either. I fully believe that when you are released from prison you will find your way back into the depths of society and commit additional crimes because that is your essence. You do not want to work. You do not want to be a productive member of society ..."

Federal Rule of Criminal Procedure 32(c)(3)(A) provides:

The court shall afford the defendant and the defendant's counsel an opportunity to comment on [the presentence report] and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

While this rule makes it discretionary with the court whether to receive evidence, the rule has been read to require that a defendant be offered some effective means of refuting erroneous facts in the presentence report. See, e.g., *U.S. v. Petitto*, 767 F.2d 607, 610–11 (9th Cir.1985).

In the present case, reasonable minds may well differ as to whether a violation of the rule has been shown. At the time of the ruling complained of, appellant's counsel did not specifically refer to what facts contained in the PSI the testimony would refute, and it may well be that the implications of Rule 32 were not adequately brought to the attention of the sentencing judge. On the other hand, counsel may have been dissuaded from pursuing the issue by the abrupt and categorical nature of the judge's ruling; and Colletti's counsel could not then have known the extent to which the sentencing judge would rely upon his negative assessment of the defendant's character in determining the sentence to be imposed.

Since the matter is being remanded for resentencing for other reasons, we need not decide this issue in this case. We are confident that the new sentencing hearing will be conducted in full compliance with Rule 32(c)(3)(A), and that the appellant will be afforded an adequate opportunity to present, by appropriate means, all pertinent information.

## V. CONCLUSION

The conviction and sentence of appellant Kevin Kelly (No. 91–5518), will be affirmed. With respect to appellants David J. Colletti (No. 91–5405) and Michael Shea (No. 91–5519), the judgments of conviction will be affirmed, but the sentences are vacated, and the case remanded for resentencing in accordance with the views expressed in the foregoing Opinion.