**UNITED STATES of America**

v.

**Brad McKEAN.**

No. 1:CR–92–206–06.

United States District Court,
M.D. Pennsylvania.

Oct. 15, 1993.

Frederick E. Martin, Office of the U.S. Atty., Lewisburg, PA, for plaintiff.

Marc F. Lovecchio, Williamsport, PA, John Stevens Berry, Lincoln, NE, for defendant.

## OPINION

MUIR, Senior District Judge.

### I. Introduction.

On August 25, 1992, a grand jury sitting in the Middle District of Pennsylvania returned a one-count indictment against six Defendants. On March 8, 1993, one of the Defendants, Brad McKean, entered a plea of not guilty to the indictment which charged him with conspiracy to distribute marijuana in violation of Title 21, United States Code, § 846. The jury was selected on May 4, 1993. The trial commenced on June 14, 1993, and ended on June 15, 1993, with a verdict of guilty. The Court ordered a presentence investigation and scheduled a presentence conference. The presentence report was prepared by Probation Officer Melvin L. Hoover, Jr., and submitted to McKean, defense counsel, and the Government on August 26, 1993. The probation officer determined that the base offense level is 26, a two-level increase in the offense level for obstruction of justice was warranted pursuant to U.S.S.G. § 3C1.1 as a result of McKean falsely testifying at his trial, the total offense level is 28, the criminal history category is I, the guideline imprisonment range is 78–97 months and the fine range is $12,500.00 to $2,000,000. The Government did not file objections to the presentence report. However, McKean objected to the two-level increase for obstruction of justice.

At the presentence conference held on September 8, 1993, it was agreed that the Government and McKean would file proposed findings of fact relating to the question of whether or not McKean committed perjury when he testified during the trial. The Government was directed to submit proposed findings of fact to defense counsel by September 20, 1993, and both McKean and the Government were directed to submit proposed findings of fact to the Court by September 27, 1993. Moreover, we scheduled oral argument on the issue raised for October 1, 1993, at 10:00 a.m. and sentencing for October 14, 1993, at 4:00 p.m.

At oral argument counsel for McKean requested that he be permitted to present testimony from McKean in order to refresh the Court's recollection regarding McKean's demeanor. In light of this request we scheduled a hearing for October 14, 1993, at 10:00 a.m. and rescheduled sentencing for October 15, 1993. On October 14, 1993, a hearing was held at which McKean testified and at which we set the sentencing time as 11:00 a.m. on October 15, 1993. The following are the Court's findings of fact, discussion, and conclusions of law with regard to whether McKean should receive a two-level increase in the offense level for obstruction of justice.

### II. Findings of Fact.

1. The prosecution's theory at the trial of McKean was that McKean assisted in obtaining marijuana from Tucson, Arizona, wrapped the substances in Mesa, Arizona, helped hide the substances through the construction of false panelling in a mobile home, loaded the substances, transported the mobile home from Arizona to Virginia, unloaded the mobile home in Virginia, received four to five thousand dollars in payment for his activities, and subsequently admitted his involvement in the offense. (Undisputed, hereinafter "U")

2. Seven witnesses testified on behalf of the prosecution at trial in support of this theory including Robert Rogers, Jack Bate, Greg Scherting, Ken Mossey, Amy Rogers, David Douty, and Tammy Bate. (U)

3. McKean testified on his own behalf at trial. (U)

4. During McKean's testimony at trial he denied obtaining the substances, wrapping it, preparing false compartments in the mobile home, loading the substances, unloading the substances, or making post-incident admissions but did admit that he transported the mobile home from Arizona to Virginia without knowing its contents, and was paid only $200.00 for expenses for the trip. (U)

5. Greg Scherting and Robert Rogers testified that McKean accompanied them to Tucson, Arizona where all three obtained marijuana from Anthony Cordova's residence. (U)

6. Robert Rogers, Jack Bate, Greg Scherting, and Amy Rogers testified that McKean assisted in the wrapping of the marijuana for transportation. (U)

7. Robert Rogers and Jack Bate testified that McKean assisted in creating false panels to hide the marijuana in the storage area of the mobile home. (U)

8. Robert Rogers, Jack Bate, and Amy Rogers testified that McKean assisted in the loading of the marijuana onto the mobile home. (U)

9. Robert Rogers, Jack Bate, and Tammy Bate testified that McKean knew that marijuana was contained within the mobile home which was driven from Arizona to Virginia on or about Thanksgiving, November, 1991. (U)

10. David Douty testified that McKean was present during the unloading of the mobile home in Virginia and the loading of the marijuana onto a truck which Douty had rented. (U)

11. Jack Bate and Greg Scherting testified that McKean assisted in the unloading of the marijuana from the mobile home in Virginia and the loading of the rented truck. (U)

12. Robert Rogers and Greg Scherting testified that McKean received four to five thousand ($4,000.00–$5,000.00) dollars in cash in Virginia for assisting in the transportation of the marijuana from Arizona to Virginia. (U)

13. Tammy Bate testified in contradiction of testimony offered by McKean that at no time did McKean act as a babysitter for her children in Virginia which excuse McKean offered regarding his non-participation in the unloading of the marijuana in Virginia. (U)

14. Ken Mossey testified that McKean admitted to him sometime in approximately December 1991, that he had been involved in transporting a quantity of marijuana from Arizona to Virginia. (U)

15. Prosecution witnesses David Douty, Ken Mossey, Jack Bate and Robert Rogers were convicted drug felons who testified pursuant to plea agreements. (U)

16. Prosecution witness Scherting entered into a plea agreement but had not yet been sentenced at the time of trial. (U)

17. Madams Bate and Rogers were the wives of prosecution witnesses, at least one of whom received immunity as a result of her husband's cooperation and plea agreement. (U)

18. Madams Bate and Rogers are sisters. (U)

19. Ken Mossey was very close to the Rogers family and considered himself part of the family. (U)

20. Greg Scherting had a business relationship with Robert Rogers. (U)

21. David Douty lived with Robert Rogers's sister Debbie at the time McKean was working for Rogers. The couple had a child. (U)

22. McKean did take the witness stand on his own behalf, and did deny guilty knowledge of the underlying conspiracy testified to by the Government witnesses as well as all overt acts testified to in furtherance of the conspiracy. (U)

23. During his testimony, McKean denied all criminal acts attributed to him. (U)

24. Prior to the beginning of trial, McKean had, through counsel, requested to be allowed to enter a letter from Don Wilkes, Investigative Consultant, dated May 27, 1993, and referring to a polygraph examination on May 26, 1993. (U)

25. In connection with the report, Don Wilkens submitted a resume showing, among other things, that he had been affiliated with the Lincoln, Nebraska police force from 1967 through 1981; that in 1973, he was a graduate of Keeler Polygraph in Chicago, Illinois; that in 1974 he was a Master of Polygraphy; that as a police officer for the City of Lincoln, he administered over 7,500 polygraph examinations, and that as a private polygraph examiner, he administered over 3,500 polygraph examinations. (U)

26. The request by counsel took the form of a Motion to Determine Admissibility of Polygraph Evidence and attached to the Motion were the questions asked, the answers given, and the charts and graphs from the instrument. The polygrapher concluded by stating that "after careful analysis of McKean's polygram, it would be the considered opinion of this polygraphist that McKean has told substantially the truth when he states that he had no knowledge of Rogers's and Bate's business of transporting illegal drugs and that he was never paid money or re-

ceived any compensation from Rogers or Bate for transporting illegal drugs." (U)

27. McKean did not suborn any improper evidence from any other party, and in fact, his only witness was his father, who was called to detail the manner in which McKean and Rogers initially became involved with one another in legitimate business dealings. (U)

## III. Discussion.

Joseph Anthony Cordova was a large scale supplier of marijuana with his principal base in Arizona. Cordova obtained the marijuana from sources in Mexico. One of his biggest wholesale customers was Robert Rogers who utilized couriers to deliver marijuana received in Arizona to Pennsylvania, Virginia and other states. The Government presented evidence at McKean's trial that in November 1991 Rogers enlisted McKean as a courier to transport a quantity of marijuana to Virginia. At trial Mckean testified he knew nothing about the delivery of marijuana to Virginia in November of 1991. The Government is now requesting a two-level enhancement of McKean's offense level for obstruction of justice pursuant to § 3C1.1 of the Sentencing Guidelines.

Section 3C1.1 of the Sentencing Guidelines provides as follows:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Most courts considering the above guideline have held that if the court finds that the defendant gave false testimony at trial, an enhancement under this section is appropriate. *See United States v. Batista–Polanco*, 927 F.2d 14, 22 (1st Cir.1991); *United States v. Matos*, 907 F.2d 274, 276 (2d Cir.1990); *United States v. Colletti*, 984 F.2d 1339, 1347–48 (3d Cir.1992); *United States v. Acosta–Cazares*, 878 F.2d 945, 953 (6th Cir.), *cert. denied*, 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989); *United States v. Contreras*, 937 F.2d 1191, 1194–1195 (7th Cir.1991); *United States v. Wagner*, 884 F.2d 1090, 1098–1099 (8th Cir.1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *United States v. Barbosa*, 906 F.2d 1366, 1369–1370 (9th Cir.), *cert. denied*, 498 U.S. 961, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990); *United States v. Beaulieu*, 900 F.2d 1537, 1539–1540 (10th Cir.) *cert. denied*, 497 U.S. 1009, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990); *United States v. Wallace*, 904 F.2d 603, 604–605 (11th Cir.1990). Only the Court of Appeals for the Fourth Circuit has held that a sentencing enhancement for perjury at trial is inappropriate and unconstitutional. *See United States v. Dunnigan*, 944 F.2d 178 (4th Cir.1991). In that case the Court of Appeals found that an enhancement pursuant to U.S.S.G. § 3C1.1 for a disbelieved denial of guilt under oath was unconstitutional in that it would create an "intolerable burden on the defendant's right to testify in his own behalf." *Id.* at 185. However, the Supreme Court granted the United States's petition for writ of certiorari and reversed the judgment of the Court of Appeals. *See United States v. Dunnigan*, ——— U.S. ———, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

Where a defendant committed perjury at his trial, an increase for obstruction of justice by two levels pursuant to U.S.S.G. § 3C1.1 is justified. However, the guidelines caution that "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statement should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1, Commentary, Application Note 1. Several Courts of Appeals have interpreted this application note as instructing the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction. *See United States v. Rojo–Alvarez*, 944 F.2d 959, 969 (1st Cir.1991); *United States v. Cunavelis*, 969 F.2d 1419, 1423 (2d Cir.1992); *United States v. Matos, supra; United States v. Franco–Torres*, 869 F.2d 797, 801 (5th Cir.1989); *United States v. Barbosa, supra* at 1370; *United States v. Wallace, supra* at 605. The Fifth Circuit, one of the first Courts of Appeals to interpret Application Note 1 of § 3C1.1, stated:

> We do not believe that this note requires the sentencing judge to believe the defendant whenever [the defendant denies cer-

tain allegations]. To construe the note in that way would effectively enable every defendant to nullify its application by self-serving testimony. Instead, we believe the note simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction. Such uncertainties may arise when the judge is unsure about which witness to believe, or when the prosecution has failed to procure available evidence crucial to the resolution of the controversy.

*United States v. Franco–Torres, supra* at 801. The Court of Appeals for the Third Circuit in *United States v. McDowell*, 888 F.2d 285 (3rd Cir.1989) has held that when the Government requests an offense level enhancement under the guidelines it must establish the facts which would support an enhancement by a preponderance of the evidence. This standard appears to be in conflict with the plain language of Application Note 1 of U.S.S.G. § 3C1.1 (i.e., "such testimony or statements should be evaluated in a light most favorable to the defendant") and the decisions of other Courts of Appeals interpreting Application Note 1. *See also United States v. Thompson*, 962 F.2d 1069, 1071 (D.C.Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993) ("The admonition in Application Note 1 to evaluate the defendant's testimony 'in a light most favorable to the defendant' apparently raises the standard of proof—above the 'preponderance of the evidence' standard that applies to most other sentencing determinations...."). Moreover, although the *McDowell* case involved an enhancement for obstruction of justice based on the defendant's subornation of perjury, the Court stated without further explanation that "[w]e explicitly do not address the burden of proof in cases where a sentencing adjustment constitutes more than a simple enhancement but a new and separate offense." *McDowell*, 888 F.2d at 291.

■ Although it is more probably so than not so that McKean committed perjury at his trial, we have no firm conviction that he committed perjury. Uncertainties arise in this case because all seven witnesses who testified on behalf of the Government had an interest in seeing McKean convicted in order to secure a reduction in their own sentences or those of their spouses. Four of the witnesses, David Douty, Ken Mossey, Jack Bate and Robert Rogers, were convicted drug felons who testified pursuant to plea agreements. One witness, Greg Scherting, entered into a plea agreement but had not yet been sentenced at the time of trial. Madams Bate and Rogers were the wives of prosecution witnesses at least one of whom received immunity as a result of her husband's cooperation and plea agreement. Douty lived with Rogers's sister and fathered a child by her. The Government did not come forward with any evidence from a disinterested witness to refute McKean's claim that he had no knowledge of Rogers's and Bate's transportation of illegal drugs and that he was never paid any money or received any compensation from Rogers or Bate for transporting illegal drugs.

Prior to the trial McKean submitted to a polygraph examination. The polygrapher concluded that "after careful analysis of McKean's polygram, it would be the considered opinion of this polygraphist that McKean has told substantially the truth when he states he had no knowledge of Roger's and Bate's business of transporting illegal drugs and that he was never paid money or received any compensation from Rogers or Bate for transporting illegal drugs." Although we place very little weight on the polygraph exam, it is a factor which we have considered. All of the foregoing facts leave us with no firm conviction that McKean committed perjury at his trial.

Finally, we think there is merit in the statement of Judge Fullam in *United States v. Colletti, supra,* that "in order to warrant the two [level] enhancement for obstruction of justice, the perjury of the defendant must not only be clearly established, and supported by evidence other than the jury's having disbelieved him, but also must be sufficiently far-reaching as to impose some incremental burdens upon the government, either in investigation or proof, which would not have been necessary but for the perjury." *Colletti*, 984 F.2d at 1348. This statement is consistent with the facts underlying our deci-

sion as the sentencing court in *United States v. Grayson*, Criminal No. 75–221. However, we are not convinced that whether a defendant should receive a two-level enhancement for obstruction of justice should turn on whether the Government was put to extra effort.

In *Grayson* we stated our belief that the Defendant, Ted R. Grayson, lied while testifying during his trial and that we would consider that factor in imposing a sentence. We imposed a two-year term of imprisonment and the Court of Appeals initially affirmed without opinion but upon rehearing reversed and remanded for resentencing. The Court of Appeals held that no additional penalty may be imposed upon a defendant because the trial judge believes that the defendant lied while testifying. *United States v. Grayson*, 550 F.2d 103 (3d Cir.1977). However, the Supreme Court reversed the judgment of the Court of Appeals and remanded for reinstatement of our sentence. *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978).

The facts underlying our sentence in *Grayson* are consistent with Judge Fullam's statement in *Colletti* because in the *Grayson* case Grayson completely fabricated a defense and imposed additional burdens upon the prosecution. At the time of sentencing the undersigned stated: "[I]t is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing, and I will do so." *Grayson*, 438 U.S. at 44, 98 S.Ct. at 2612. Grayson was charged with escape from the Allenwood Federal Prison Camp. His defense was that he escaped because he was "... threatened with a large stick with a nail protruding through it by an inmate that was serving time at Allenwood and [he] was scared, and [he] just ran." *Grayson*, 438 U.S. at 42, 98 S.Ct. at 2611. Moreover, "[h]e testified that the threat was made in the presence of many inmates by prisoner Barnes who sought to enforce collection of a gambling debt and followed other threats and physical assaults made for the same purpose. Grayson called one inmate, who testified: 'I heard [Barnes] talk to Grayson in a loud voice one day, but

that's all. I never seen no harm, no hands or shuffling whatsoever.'" *Grayson*, 438 U.S. at 42–43, 98 S.Ct. at 2611–12. As a result of Grayson's fabrication the prosecution had to call rebuttal witnesses to contradict Grayson's story including the alleged assailant Barnes who by that time was no longer an inmate.

■ We are of the view that in order to warrant a two-level enhancement for perjury, the perjury must be clear and a complete fabrication and not just a statement equivalent to "I did not do it." Therefore, we will decline to enhance McKean's sentence for obstruction of justice.

### IV. Conclusions of Law.

1. This Court may not automatically impose an upward adjustment for obstruction of justice whenever a defendant's testimony has been rejected by a judge or a jury.

2. The standard of proof in applying § 3C1.1 is greater than a preponderance of the evidence.

3. In order to apply § 3C1.1 of the sentencing guidelines the Court must have a firm conviction that the defendant obstructed justice.

4. This court has no firm conviction that the Defendant obstructed justice in this case.

5. The base offense level is 26.

6. The total offense level is 26.

7. The criminal history category is I.

8. The guideline imprisonment range is 63 to 78 months.

9. The guideline fine range is $12,500.00 to $2,000,000.

An appropriate order will be entered.

### ORDER

Defendant's objection to the two-level increase in the offense level for obstruction of justice is sustained.