**UNITED STATES of America,**

v.

**Mark BOOKER, a/k/a Pomp Booker a/k/a Joseph Booker a/k/a Joseph Royce Joseph Booker, Appellant.**

**No. 01–2060.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) Jan. 14, 2003.

Decided Feb. 7, 2003.

Before: ROTH, FUENTES and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Appellant Joseph Booker appeals from the 97 month sentence imposed on him by the District Court after he pled guilty to two counts of the five count indictment then pending against him. Booker asserts that the District Court erred by (1) imposing a four-level enhancement for his alleged leadership role in the offense pursuant to U.S.S.G. § 3B1.1(a); (2) adopting the loss calculation contained in the Presentence Report rather than the amount the government was seeking as restitution,

resulting in a ten-level sentencing enhancement under U.S.S.G. § 2F1.1(b)(1)(K); (3) finding a criminal history category of VI; and (4) imposing a two-level enhancement for obstruction of justice. Discerning no error in any of the District Court's determinations, we will affirm.

## I. *Facts and Procedural Background*

The facts and circumstances underlying this case are well known to the parties, and therefore, they are not detailed here, except to the extent that they directly bear upon the analysis. As relevant to this appeal, Booker was charged by a grand jury with a five count indictment in which he was accused of engaging in fraudulent acts in order to obtain mortgage loans from various lenders in the names of his nephews, Dwight Drakeford and Darnell Locke a/k/a Darnell Booker. Counts One through Four of the Indictment charged Booker with using interstate wire communications on various dates in order to obtain money and property by means of false and fraudulent pretenses, in violation of 18 U.S.C. §§ 1342 and 1343. Count Five charged Booker with conspiracy to devise a scheme and artifice to defraud using interstate wire communications, contrary to 18 U.S.C. § 1343 and in violation of 18 U.S.C. § 371.

On October 12, 2000, Booker appeared before the District Court and entered a plea of guilty to Counts Three and Five of the Indictment. At issue during sentencing were defendant's acceptance of responsibility, the amount of monetary loss, defendant's role in the offense, calculation of criminal history, and whether it overstated the defendant's actual criminal history. The parties agreed to a two point reduction for acceptance of responsibility. The Court ruled in favor of the government on the remaining issues. The Court sentenced Booker to a term of 60 months on Count Three and 37 months on Count Five, to be served consecutively. Additionally, the Court placed Booker on supervised release for a term of 3 years on each Count, terms to run concurrently, imposed restitution of $316,880, a fine of $15,000 and a special assessment of $100. Booker filed a timely Notice of Appeal.

## II. *Jurisdiction*

The District Court exercised jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III. *Discussion*

### A. *The four-level enhancement for Booker's leadership role in the offense under U.S.S.G. § 3B1.1(a)*

In reviewing adjustments under the sentencing guidelines, "[w]e exercise plenary review over legal questions about the meaning of the sentencing guidelines, but apply the deferential clearly erroneous standard to factual determinations underlying their application." *United States v. Inigo*, 925 F.2d 641, 658 (3d Cir.1991) (citing *United States v. Ortiz*, 878 F.2d 125, 126–27 (3d Cir.1989)). Whether a defendant receives an increased offense level based on his role in the offense is a factual determination which is reviewable under the clearly erroneous standard. *See United States v. Badaracco*, 954 F.2d 928, 933 (3d Cir.1992), *reh'g* and *reh'g en banc denied* Feb. 19, 1992 (citing *United States v. Salmon*, 944 F.2d 1106, 1126 (3d Cir. 1991)).

U.S.S.G. § 3B1.1(a) provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" U.S.S.G. § 3B1.1(a) (2000). The burden of

proving that an upward adjustment is warranted by a preponderance of the evidence rests with the government. *See Badaracco*, 954 F.2d at 935. In order to be considered a participant under the sentencing guidelines, "an individual must be criminally responsible, *i.e.*, s/he must have committed all of the elements of a statutory crime with the requisite *mens rea.*" *Id.* at 934–35.

Booker argues that the District Court erred by considering as participants in his criminal activities Michael Bassillo and John Bigley, two appraisers who overstated the fair market value of properties involved in his mortgage fraud. Booker asserts that, although the appraisals received from Bassillo and Bigley were a necessary part of his criminal activities, these individuals did not act in a manner that makes them criminally responsible because they did not understand the scheme with which they were involved. Accordingly, Booker asserts that the District Court should have assessed a two-level enhancement under U.S.S.G. § 3B1.1(c), rather than the four-level enhancement of U.S.S.G. § 3B1.1(a).[1]

The government counters that, irrespective of whether or not Bassillo and Bigley are considered to be participants, the four-level enhancement imposed by the District Court was warranted because it was based on alternative findings made by the Court. Indeed, the Court observed as follows:

> However you define the group, whether you define it as the Defendant[,] Drakeford, Darnell Booker, Robert Saypol and Maureen Del Sole, or whether you define it to include the [D]efendant, Drakeford, Darnell Booker, and the two appraisers, Basillo [sic] and Bigley, you have a basis for the finding of five participants. There is no question that Mr. Booker was the organizer and leader of a criminal enterprise that involved them.
>
> \* \* \* \*
>
> In addition to counting the number of participants it is abundantly clear to me that the criminal conduct that brings us here today was "otherwise extensive." And I so find. Accordingly, the guidelines issue of role in the offense is resolved as probation resolved it.

Appellee's App. at 49–50 (quotation marks added).

Booker does not dispute that Drakeford, Darnell Booker, Saypol, and Del Sole were all participants in the criminal activities for which he was convicted. Our review of the record indicates that appellant's nephews, Darnell Booker and Drakeford, each pled guilty to a one-count information charging them with conspiracy to commit wire fraud. Presentence Report at ¶¶ 5–6. Saypol, formerly an attorney admitted to practice law in New Jersey and an indicted co-conspirator, pled guilty to a one-count information charging him with misprision of a felony for his role in the fraudulent loan transactions, which included misleading lenders by falsely certifying his receipt of down payment checks. *Id.* at ¶¶ 6 & 38. Del Sole was not charged, but testified before a grand jury that she knowingly

---

1. U.S.S.G. § 3B1.1 provides:
   Based on the defendant's role in the offense, increase the offense level as follows:
   (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
   (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
   (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
   U.S.S.G. § 3B1.1 (2000).

participated in Booker's mortgage fraud scheme and acted under his direction while serving as a vice president for his company by signing false documents which were submitted to lenders. *Id.* at ¶ 39. Booker himself counts as a fifth participant. *See United States v. Colletti,* 984 F.2d 1339, 1346 (3d Cir.1992) (defendant was properly counted as a participant because "there is no requirement that there be five persons in addition to their leader, merely a criminal activity 'that involved five or more participants[.]' ").

We conclude that the District Court's finding that the criminal activity which Booker organized involved five or more participants was not clearly erroneous. It is therefore unnecessary for us to reach the issue of whether the District Court's imposition of the four-level enhancement was not clearly erroneous in light of its alternate finding that the conduct before it was "otherwise extensive" within the meaning of U.S.S.G. § 3B1.1(a).

**B.** *The ten-level enhancement for fraud loss involving more than $500,000 under U.S.S.G. § 2F1.1(b)(1)(K)*

█ "[O]ur review of the district court's interpretation of 'loss' under [U.S.S.G.] § 2F1.1 is plenary, and our review of the district court's application of the guidelines is governed by the clearly erroneous standard." *United States v. Evans,* 155 F.3d 245, 252 (3d Cir.1998) (citing *United States v. Collado,* 975 F.2d 985, 990 (3d Cir. 1992)). "[L]oss need only be a reasonable estimate, based on available information." *United States v. Hayes,* 242 F.3d 114, 117 (3d Cir.2001) (citing U.S.S.G. § 2F1.1(b)(1), Application Note 9). Pursuant to U.S.S.G. § 2F1.1(b)(1)(K) (2000), a defendant's base offense level is increased by ten levels when the amount of loss resulting from fraudulent conduct is more than $500,000 but less than $800,000. *See* U.S.S.G. § 2F1.1(b)(1)(K) (2000).

Booker argues that the District Court should have found a loss of $316,880, the amount of restitution he was ordered to pay by the Court. He reiterates the argument he made at sentencing that the fact that some of the banks which had made mortgage loans to his nephews were not seeking restitution indicated that they had not been harmed and, moreover, had incurred a tax advantage by writing off the unpaid loans. The government counters by explaining how the probation office calculated that Booker was responsible for an actual loss of $554,415. The Presentence Report indicates: "The actual loss was calculated by determining how much of the principal loan amount was not recovered, following a foreclosure by the lender or third-party investor. Foregone interest, unpaid real estate taxes, and expenses incurred in the foreclosure sales have not been included in the actual loss figure for each property." Presentence Report at ¶ 29 n. 2.

We agree with the government that the Presentence Report's calculation of loss was conservative. The loss calculation was conservative because it did not include foregone interest. *See United States v. Sharma,* 190 F.3d 220, 228 (3d Cir.1999) ("[I]n determining the amount of the actual loss sustained by the victim in a criminally fraudulent loan the sentencing court may include the contractually bargained-for interest."). Also, the probation office used a zero loss value for 6 of the 23 loans for which it lacked some supporting documentation rather than approximating the amount of those losses.[2]

**2.** *See* U.S.S.G. § 2F1.1 (2000), Application Note 9 ("The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may

We therefore conclude that the District Court's finding of a loss in the amount of $554,415 was not clearly erroneous.

### C. The finding of Criminal History Category VI

■ A defendant's criminal history category is calculated by adding criminal history points for prior criminal convictions. *See* U.S.S.G. § 4A1.1 (2000). U.S.S.G. § 4A1.2(a)(2) provides that "[p]rior sentences imposed in related cases are to be treated as one sentence" for purposes of determining the appropriate criminal history category. U.S.S.G. § 4A1.2(a)(2) (2000). "[P]rior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2(a)(2) (2000), Application Note 3.

In this case, the offenses at issue did not occur on the same occasion and they were not consolidated for trial or sentencing. The parties' dispute is over whether they were part of a common scheme or plan. The burden is on the defendant to establish that his prior convictions were part of a common scheme or plan. *See United States v. Beckett,* 208 F.3d 140, 147 (3d Cir.2000). The focus is on the defendant's intent, which is a question of fact, the resolution of which we review for clear error. *See id.*

Booker asserts that a Criminal History Category VI finding was not warranted. He argues that his conviction in Alabama in March of 1979 for making a false statement on a bank loan application was related to his conviction in New Jersey in September of 1979. Booker argues that the

Alabama and New Jersey offenses were part of a common scheme or plan because he fraudulently purchased real property in New Jersey then used the property as security to enable him to fraudulently obtain a loan in Alabama, which he used to purchase a club there. He notes that the same investigation uncovered both crimes. In response, the government asserts that the two frauds were not part of a common scheme or plan because they occurred four months apart, had separate victims in separate states, and had completely different modus operandi.

The District Court recognized that whether the offenses were part of a common scheme or plan was addressed by this Court in *United States v. Beckett,* 208 F.3d 140 (3d Cir.2000). In *Beckett,* we adopted the Seventh Circuit's holding that " 'scheme' and 'plan' are words of intention, implying that [the two offenses] have been jointly planned, or at least that it would have been evident that the commission of one would entail the commission of the other as well." *Beckett,* 208 F.3d at 147 (citing *United States v. Ali,* 951 F.2d 827, 828 (7th Cir.1992)).

After setting forth the controlling legal standard, the District Court found:

> There has been no showing that the conviction of one would lead to conviction for the other. There has been no showing that at the time of the commission of the first offense there was a plan to commit the second offense. Indeed, there is nothing indicating that at the time of the commission of the first offense the defendant even intended to open a restaurant in Alabama, and it is the financing of that restaurant that is the subject matter of the second offense.

be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and

the revenues generated by similar operations. The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss.").

* * * *

Exhibit D to the government's sentencing memorandum is referred to by the government, and does support the government's position in that Mr. Booker stated that he had never planned to defraud the bank ... It is difficult to see how if he didn't plan to defraud the victim in that offense, there could be a common plan to defraud arising from that April, 1978, offense, and the August, 1978 Alabama offense.

So my analysis of the criminal history is that probation is correct, and paragraphs 81 and 94 [of the Presentence Report, describing, respectively, the Alabama and New Jersey convictions] were each correctly assigned criminal history points, the number of points is not challenged.

Appellee's App. at 42–44. On appeal, Booker has not come forward with record evidence supporting a conclusion that the District Court's finding was clearly erroneous. We conclude that the District Court did not err in finding that the Alabama and New Jersey convictions were not related for sentencing purposes.

■ Next, Booker argues that the District Court should have granted his motion for downward departure on the basis that the inclusion of his conviction in April of 1980 for escape from a federal institution in the calculation of his criminal history category resulted in his Criminal History Category of VI, which overstates the seriousness of his actual criminal history. We review a district court's decisions concerning departures from the Sentencing Guidelines for an abuse of discretion. *See, e.g., United States v. Abuhouran,* 161 F.3d 206, 209 (3d Cir.1998) (citing *United States v. Sally,* 116 F.3d 76, 78 (3d Cir.1997)). However, "[w]e lack jurisdiction to review a refusal to depart downward when the district court, knowing it may do so, none-

theless determines that departure is not warranted." *United States v. McQuilkin,* 97 F.3d 723, 729 (3d Cir.1989) (citing *United States v. Denardi,* 892 F.2d 269, 272 (3d Cir.1989)).

The District Court recognized that it had the authority to grant a downward departure on the basis that Criminal History Category VI overstated Booker's actual criminal history. The Court noted that:

taken together [the Alabama and New Jersey convictions and the escape from a federal institution conviction] do not form a basis for a downward departure as a significant over-representation of criminal history ...

[T]hey are all separately dealt with, and appropriately so. And insofar as a likelihood of recidivism is concerned, this offense that we are dealing with here today makes it abundantly clear to me that there has been no over-representation of the likelihood of recidivism inherent in [the offenses for which Booker was previously convicted].

Appellee's App. at 44–45. Because the District Court recognized that it had the authority to grant a downward departure and concluded that a departure was not warranted, we lack jurisdiction to review this ruling.

For the foregoing reasons, we conclude that the District Court properly determined that a Criminal History Category of VI was appropriate.

### D. *The two-level enhancement for obstruction of justice*

■ We apply a clearly erroneous standard in reviewing the District Court's factual determination that a defendant willfully obstructed justice. *See United States v. Belletiere,* 971 F.2d 961, 964 (3d Cir.1992). U.S.S.G. § 3C1.1 provides:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (2000). The Application Notes provide that one way to trigger this enhancement is by "providing materially false information to a judge or magistrate." U.S.S.G. § 3C1.1 (2000), Application Note 4(f).

On March 6, 1996, after learning that his nephews had confessed to the FBI, Booker made a series of inculpatory statements to special agents of the FBI. He subsequently moved to suppress those statements. In support of his motion to suppress, Booker averred that, when he was being questioned by the FBI, he did not understand that he was free to leave, could remain silent, or could terminate the questioning. He also averred that he believed that he was going to be questioned about matters in which there were no allegations of wrongdoing against him. Additionally, in paragraph 3 of his affidavit, Booker averred that, although his attorney told him that he signed an "Interrogation and Advice of Rights Form," he did not understand that the statements he made to the FBI could be used against him. After briefing on the suppression motion, the Court denied the motion to suppress.

During the sentencing hearing, the District Court heard testimony from Postal Inspector Robert Krut, who was present when Booker made inculpatory statements on March 6, 1996. Krut testified that Booker was advised that he was the target of an investigation and was advised of his

rights in detail before he signed the waiver. Krut also testified that, when Booker told the authorities that he wished to leave later in the afternoon in order to make another appointment he had scheduled, they told him he could do that and thereby gave him control over the duration of the interview. Krut described Booker as being relaxed, cordial, and cooperative. *See* Appellee's App. at 86–91. After hearing Krut's testimony and that of FBI Agent Scott Marino, the District Court ruled:

Now, I denied the suppression motion to which this affidavit, paragraph 3, that we are all referring to was an adjunct, it was submitted in support of that suppression motion, found I did not believe the defendant.

I now go further. Not only do I not believe paragraph 3. I find that it was a deliberate lie. I do not implicate counsel in that. . . .

So the fact that the affidavit was prepared by counsel does not implicate counsel in this. But it certainly implicates the defendant whose position it is, whose statement it is, and who swore to it, and he swore to it in an effort to have evidence that he willingly gave in the March 6 meeting suppressed. So I find an obstruction of justice based upon Inspector Krut's testimony.

Appellee's App. at 141–42. Booker asserts that, because the statements he made in his affidavit in support of his motion to suppress related to his state of mind and level of understanding of his constitutional rights, they are not sufficiently factual to meet the materiality requirement of U.S.S.G. § 3C1.1. We disagree. Material information is defined by the Application Notes as meaning "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 (2000), Application Note 6. Here, Booker's

sworn statement was material because, if believed, it would "tend to influence" whether or not the Court suppressed the inculpatory statements he made to the authorities.

We discern no error in the District Court's imposition of a two-level enhancement for obstruction of justice.

## IV. *Conclusion*

After carefully considering the arguments discussed above and all other arguments advanced by the appellant in support of his assertion that the District Court erred with respect to his sentencing, we affirm the District Court's judgment.

